WINDSOR,
*February*
1839.

EDWIN HUTCHINSON *v.* JOHN A. PRATT, J. CHURCHILL, O. P.
CHANDLER, T. E. POWERS and PHILO HATCH.

Under an act incorporating a village, a record of a vote made by the
village clerk, and placed upon the records by a clerk, *pro tem.* under
the inspection and direction of the clerk, is legal evidence of such
vote, notwithstanding the clerk *pro tem.* may not have been sworn.
It is incident to all such corporations to appoint a clerk *pro tem.* to keep
minutes of their proceedings, if the regular clerk is temporarily absent,
and if they cause their proceedings to be entered of record, under the
direction of the clerk, such record is evidence of their proceedings.

*Semble,*—in certain cases where there is no record, the proceedings of such
meeting may be proved by parol.

Under an act of incorporation, authorizing a village to tax themselves and
levy and collect taxes to carry into effect any vote or by-law of the cor-
poration, and authorizing the enactment of such by-laws and regulations
as they should deem expedient, such village may, under a by-law ma-
king it the duty of their trustees to keep the fence around a common in
proper repair, vote a tax for the repair or rebuilding of such fence.

TRESPASS, for taking certain articles of personal property.

Plea, Not Guilty, and notice of special matters under said
issue by way of justification.—Issue joined to the court.

On the trial in the county court the taking was admitted
by the defendants.

Under said plea and notice, the defendants gave in evidence
an act of the legislature of this state, incorporating the vil-
lage of Woodstock, passed Nov. 11, 1836, which was re-
ceived without objection.

The 4th section of said act of incorporation, among other
things, provided that the inhabitants of said village might
tax themselves, and levy and collect taxes, to carry into ef-
fect any vote or by-law of said corporation;—provided that
no tax should be assessed, except by vote, at a meeting of
said inhabitants, warned for that purpose.

The 5th section gave the corporation power to enact such
by-laws and regulations, as they should, from time to time,
deem expedient;—particularly such as might relate to their
streets, side-walks, lanes and commons, and the shade and
ornamental trees thereon, &c.

The 6th section provided that the clerk, treasurer and col-
lector should be sworn to the faithful discharge of the duties
of their respective offices, &c.

The 7th section made it the duty of the clerk to keep re-
cords of all the proceedings of the corporation and give

copies of the same, when required, and warn all meetings, annual and special, agreeably to the directions of the trustees.

WINDSOR,
February,
1839.

Hutchinson
v.
Pratt et al.

The 8th section made it the duty of the trustees to make out and deliver to the collector an assessment or rate bill of all taxes which should be laid by the corporation,—and, in case of the death, removal, absence or incapacity of the clerk, it provided that the trustees might designate one of their number to perform the duties of clerk.

The 9th section enacted that the inhabitants and territory, included in the limits of said village, should belong to said town of Woodstock, in the same manner as though that act had not passed.

The defendants also introduced the by-laws of said corporation, one of which made it the duty of the trustees to keep the side-walks of the village, and the fence around the common, in proper repair, and plant such shade trees in the streets, and on the common, as they might think proper.·

It was conceded by the plaintiff, that said village was duly organized under said act ;—also, that at a meeting of said village, held January 2, 1837, Nahum Haskell was duly chosen clerk of said village ;—and, at the same meeting, the defendants were duly chosen trustees, and George C. Pratt collector of said village.

The defendants then gave in evidence the record of a warning, signed by Nahum Haskell, clerk, and dated 22 April, 1837, calling a meeting of the inhabitants of said village, to be holden on the 2d day of May, 1837, which was received without objection.

The objects of said meeting, were stated in the warning to be ;—

1. To see if the village will order the trustees to re-build the fence around the common in said village :—

2. To see if the village will order the trustees to purchase an engine and hose for said village :—

3. To raise money to defray the expenses of said village :—and

4. To do any other business, thought proper, when met.

It was agreed by the parties that the property, sued for, was taken by the said George C. Pratt, as collector, by virtue of a tax-bill and warrant, committed to him by the defendants, as trustees of said village ;—purporting to be in

Windsor,
February,
1839.

Hutchinson
v.
Pratt et al.

pursuance of a vote of said village, raising a tax of five cents on the dollar, on the grand list of said village, at a meeting of said village, purporting to have been holden on the 2d day of May, 1837. Said tax-bill and warrant were produced and admitted in evidence, the plaintiff reserving the right of objection to their sufficiency and relevancy.

The defendants then offered in evidence the regular book of records of said corporation, containing, among other things, what purported to be a record of the doings of a meeting of said village, holden on the 2d day of May 1837, which was as follows, viz.——

At a meeting of the inhabitants, legal voters of the village of Woodstock, legally warned and holden, at the town hall in Woodstock, on Tuesday, the 2d day of May, 1837 ;——

1. Chose Asaph Fletcher, jr. chairman.

2. Chose Josiah Chandler, jr. clerk, *pro tem.* in the absence of N. Haskell, standing clerk.

3. Voted, to instruct the trustees to procure stone posts for the repair of the common fence, in this village, by next winter.

4. Voted, that the trustees be directed to purchase a fire engine for this village, with hose.

5. Voted, to raise five cents upon the dollar, on the grand list, to be collected in the month of September next.

Voted, to dissolve the meeting.

ASAPH FLETCHER, JR. Chairman.

JOSIAH CHANDLER, JR. Clerk, *pro tem.*

Woodstock, May 8, 1837.

Then Josiah Chandler, jr. made solemn oath that the foregoing is a just and true record, made by him, of the doings of the meeting.

Before me, N. HASKELL, Justice Peace.

A true Record. *Attest,* N. HASKELL, Village Clerk,

The defendants also offered, in connection with the foregoing record, the paper annexed and marked " *A.*"—and in connection, also, with parol evidence that Josiah Chandler, jr. was, at said meeting, chosen and acted as clerk, *pro tem.* that the proceedings were had at said meeting, which are set forth in said paper, marked " *A.*" and that said Chandler made the said memorandum and signed it, and that he handed the same over to the regular clerk of said corporation,

(Nahum Haskell,) by whom it has ever since been kept among his files.

*A.*

At a meeting of the village corporation of Woodstock, Vt. 2d May, 1837, "warned" pursuant to previous notice ;—

1. Chose Asaph Fletcher, jr. chairman.

2. Chose Josiah Chandler, jr. clerk, *pro tem.* in the absence of N. Haskell, standing clerk. ·

*On Motion ;—*

3. Voted, to instruct the trustees to procure stone posts for the repair of the common fence in this village, by next winter.

4. Voted, that the trustees be instructed to purchase a fire engine in this village, with hose.

5. Voted, to raise five cents on the dollar, upon the grand list, to be collected in the month of September next.

Voted, to dissolve the meeting.

*Attest,*    JOSIAH CHANDLER, JR., Clerk, *pro tem.*

ASAPH FLETCHER, JR., Chairman.

Which said records, paper marked "*A*" and parol testimony, so offered by defendants, were all objected to by the plaintiff, but admitted by the court. It was also shown that said George C. Pratt was, on the 15th day of June, 1837, duly sworn to the faithful discharge of his duty, as collector of said village.

From the foregoing testimony, the county court found the facts; viz. that on the 2d day of May,1837, at a meeting of said village, regularly and duly warned and holden for that purpose, said Josiah Chandler, jr. was duly elected and acted as clerk, *pro tem.* of said meeting, in the absence of N. Haskell, standing clerk ;—that a vote was regularly passed to· raise five cents on the dollar upon the grand list of said village, to be collected in the month of September, then next ; that, in pursuance of said vote, the defendants, as trustees of said village, did make out their rate-bill in due form, and did, on the first day of June, 1837, deliver the said rate bill, together with a regular warrant, signed by a justice of the peace, in proper form, to said George C. Pratt, as collector, for collection, and that, in pursuance of said rate-bill and warrant, the said Pratt took the property mentioned in the plaintiff's declaration ;—also, that said Josiah Chandler, jr.

made the said memorandum marked " *A*," and signed it, and that he handed the same over to Nahum Haskell, the regular clerk of said corporation by whom it has ever since been kept on the files of said corporation ;—Also, that said Josiah Chandler jr. was not otherwise sworn, than as set forth in the certificate of N. Haskell, upon said book of records ;—Also, that said George C. Pratt was, on the fifteenth day of June, 1837, duly sworn to the faithful discharge of his duty, as collecter of said village.

The following facts were, on the trial, conceded as true, viz. ;—That the said tax of five cents on the dollar was raised for the purpose of procuring stone posts for the repair of the fence around the common, in said village, and for purchasing a fire engine for the use of the village ;—that the said common had been used as an open, public common, for as many as forty years, next prior to the year 1830, when it was by individuals inclosed by the same fence, by which it is now inclosed, and shade trees were also set out around said common, within said fence ; that, from the time said common was fenced, as above mentioned, to January 1837, the grass, growing within said inclosure, was sold, from year to year, for the purpose of defraying the expense of erecting said fence ;—that, in the year 1837, said grass was sold by the defendants as trustees of said corporation, for the purpose of defraying the expense of manuring the said common and keeping the said fence in repair,—and that, in the year 1838, said grass was sold by said trustees for the sum of five dollars, in manure for the common, and to keep the fence in repair.

The county court rendered judgment for the defendants, and the plaintiff excepted.

*E. Hutchinson* and *A. Aikens*, for plaintiff.

I. As to to the admissibility of the testimony.

One objection taken to the record, on the trial below, was, that it was not competent for Haskell, the standing clerk, to make a record of the doings of a meeting, at which he was not present. A record "imports verity," and implies official knowledge of the facts recorded, and an official oath, if one be required. 4 Coke's R. 70, Abridgment 117. 3 Dane's Abridgment, p. 294–5, ch. 80, art. 2, §1. Id. p. 312, ch.

81, art. 2, §15.  *Dodds* v. *Henry*, 9 Mass. R. 264.  *Tay-lor* v. *Henry*, 2 Pick. R. 401–2.

Both the record and paper marked "A." depend for their verity wholly upon the attestation of Chandler, the acting clerk, *pro tem.*

In all cases, where the courts require proof of the *appointment*, they do also of the *oath.*  *Mayor of Exeter* v. *Staire*, 2 Shower's R. 163.  *Andrews* v. *Chase*, 5 Vt. R. 413.— *The King* v. *Roberts*, 30 Com. L. R. 213.

We admit the correctness of the position that, in relation to all public officers, appointed under the general laws, and concerned in the administration of the government, so far as it regards the public or third persons,—and, perhaps, may be included the regular officers, under their respective charters, of all corporations, both public and private, where the fact comes collaterally in question, and so far as it regards third persons, and for all purposes of protecting the corporate interests as against strangers, or of enforcing the contracts of the corporation with third persons, both in favor of and as against the corporations,—it is sufficient to show them officers *de facto*, publicly acting and recognized as such, without proof of either their appointment or oath.

But the rule is not applied by the courts, indiscriminately to all officers nor in all cases.  It does not apply to a suit, as a *quo warranto*, brought to try the right to the office.

Neither does it apply to the case of an officer who is such by special appointment, for a particular purpose or occasion only.  *Adams* v. *Jackson*, 2 Aik. R. 147.

Were this a suit against the corporation, they could not justify by merely showing the attesting clerk to have been such, *de facto*, any more than that they were a corporation, *de facto*, or that there was a meeting, *de facto*, or that the trustees or collectors were such, *de facto*.

This suit, though brought against the trustees, for the reasons given by the court in *Waters* v. *Daines*, 4 Vt. R. 602, is, in effect, a call upon the corporation for its authority assumed, and, a like *quo warranto*, puts in issue the corporate existence and the powers assumed, the official powers and qualifications of the agents it employed in collecting the tax, as well as the regularity and legality of the doings, both of

Windsor,
February,
1839.

Hutchinson
v.
Pratt et al.

## 408     CASES IN THE SUPREME COURT

the corporation and its agents, so far as they are necessary to make out a justification, both in matters of substance and of form. They must be shown to be in conformity with the requisitions of the act of incorporation. If so, the record, being the foundation and only legal proof of the whole, should, *a fortiori*, be got up according to law.

As to what provisions in an act are to be regarded as merely directory, and in what cases, or when as conditions precedent, see opinion of Story, J. in *Bank of U. S.* v. *Dandridge*, 12 Wheaton's R. 614. 6 U. S. Cond. R. 454.

It was the legislative intention, in the provision in question, that, as against the members to be bound by the record, the oath of the clerk should be a condition precedent to the exercise of the power. See, also, Chief Justice Marshall's opinion, 1 Burr's Trial, 97 to 100. *Colburn* v. *Ellis et al.*, 5 Mass. Rep. 427. *Welles et al*, v. *Battelle et al.*, 11 do. 480–1.

The oath taken by Chandler, the acting clerk *pro tem.* was in no sense an official oath, within the meaning of the legislature, but a mere affidavit of facts—the oath administered extra-judicially, in a case not provided for by law, and to which the penalties for false swearing could not attach. It was no more an official oath than his testimony upon the stand to the same facts.

Another objection taken is, that inasmuch as the act points out the mode in which the evidence of the corporate votes is to be perpetuated, in the absence of the regular clerk, to wit, by "the trustees designating one of their number to perform the duties of clerk," the corporation could act in no other mode. 2 Kent's Com. 240. *Bates* v. *Hazeltine et al*, 1 Vt. R. 83. Angell & Ames on Corporations, p. 291, § 13.

But, admitting the power to be in the corporation to act by a clerk *pro tem.* of their own appointment, *from necessity*, when the business could not otherwise proceed, that case must exist and the necessity be shown, and should appear of record,—at least it must appear in some way. Unless a majority of the trustees were absent also, there was no more necessity for acting by a clerk, *pro tem.* to be chosen by the corporation at large, than if the regular clerk were present. See *the Andover and Medford Turnpike Co.* v. *Gould*, 6

Mass. R. 144. *Head & Amory* v. *Providence Insurance Co.* 2 Cranch's R. 127. 1 Cond. R. 374–5. *Rex* v. *Mayor &c. of Liverpool,* 4 Burr. R. 2244.

The paper marked "A." is no record evidence,—for a regular book of records of the corporation was produced, of which this is no part. Besides, it is subject to the objections before urged. It could only be used as a memorandum to refresh the memory of the witness, provided parol evidence was properly received.

Next;—Was parol evidence of the appointment of Chandler, as clerk *pro tem.* or of the vote of the tax admissible?—We say not.

This was not the case of a record once completed according to law, and lost, or destroyed by accident.

All the record there ever was was in court.

But, treating it as if no record had been made or attempted, parol evidence was not admissible. *The Bank of the U. S.* v. *Dandridge,* 12 Wheaton's R. 64. 6 Cond. R. 454, before cited.

But the authorities all concur in relation to cases of the character of the present, that a corporate body, assuming a power of this nature, must show strictly their authority, and that the power has been executed with all the formalities required by law, both as to the raising of the tax, and the mode of proof; and, if the law contemplates record evidence, none other can be received.

Every principle of public policy demands, that no corporate body should be permitted to exercise so important a power as that of taxation and distress, without preserving an exact record, open to inspection, of the mode in which that power has been exercised; that it may appear,—not from the frailty of human recollection, one thing to-day, to-morrow another—but by evidence unchangeably the same, that courts and juries, and all concerned may see and read for themselves, whether the power has been legally or illegally executed. See *Bates* v. *Hazeltine,* 1 Vt. R. 84. *Thayer* v. *Stearns,* 1 Pick. R. 111. *Searsburgh Turnpike Co.* v. *Cutler,* 6 Vt. R. 322–3. *Taylor* v. *Henry,* 2 Pick. R. 403.

Suppose a doubtful vote and no record. Would the court

put it to the jury to decide, by witnesses upon the stand, upon the weight of evidence, whether a tax was voted or not? One jury would find one way, another the other way; and it would stand established by the records of our courts, both vote and no vote, in the same transaction. The same tax would be legal and it would be illegal, accordingly as successive juries chanced to weigh the evidence, and would result in reducing the proceedings of all corporate bodies from a state of legal certainty into utter confusion.

It has been heretofore urged, that the principles settled in *Bates* v. *Hazeltine*, 1 Vt. R. 81, are inapplicable to such a corporation as this. In what the distinction consists, we have not, as yet, been made fully to comprehend. The same principles are applied in the cases of town taxes. In the case above cited of *Andover & Medford Turnpike Co.* v. *Gould*, 6 Mass. R. 44, it is said, they apply "to all taxes, public and private." *Dunham & Daniels* v. *Trustees of village of Rochester*, 5 Cowen's R. 462. See, also, *Thames Manufacturing Co.* v. *Lathrop et al.*, 7 Conn. R. 550. *Willard* v. *Killingworth Borough*, 8 do. 254.

But if the vote of the tax was proved by legal testimony, the *tax was illegal*. The case finds the fact, that part of the tax was raised for the *purchase of stone posts for the repair of the fence around the common* in said village. It will be urged, (and such is the fact,) that the vote is in pursuance of a *general by-law* of the corporation, requiring the common to be kept fenced. This was for a purpose, as we contend, wholly unauthorized by the act of incorporation.

A tax, bad in part, is wholly illegal. *Stetson* v. *Kempton et al.*, 13 Mass. R. 272. *Libby* v. *Burnham et al.*, 15 do. 144. *Bangs* v. *Snow et al.*, 1 do. 185. *Drew* v. *Davis et al.*, 10 Vt. R. 506.

The public had an easement in this common, having been acquired by a use for forty years, and the easement is subject to no other limitation, but is co-extensive with that use, which is that of a public common or highway, in its most extensive signification. 1 Hawk. P. C. 366–7. *State* v. *Trask*, 6 Vt. R. 367.

To inclose any portion of a public highway, whether a tra-

velled road, a public quay, or common, or an arm of the sea, even though the erection is, in many respects, an ornament, or beneficial to the public, is, nevertheless, in the eye of the law, a "public or common nuisance," and is the ground of indictment at common law, and may be abated by any individual. *Hart* v. *Mayor &c. of Albany*, 9 Wendell's R. 590. *Same case*, 596. *State* v. *Wilkinson*, 2 Vt. R. 480. *Pomeroy* v. *Mills*, 3 do. 279. *Same* v. *Same*; 3, do. 410. *Abbott* v. *Mills*, 3 do. 521. *State* v. *Catlin*, 3 do. 530.

Had the legislature, *in express terms*, given to this corporation the power to fence and make such use of, as has been made of this common for a few years past, the constitutionality of such an act might be questionable, at least as against the owners of the fee. And if the owners of the fee might object successfully, it would seem to involve an absurdity, that a tax should be pronounced legal for the purpose of erecting a fence, which any one could cause to be removed as a public nuisance, *or* as an encroachment upon his individual rights.

" The modern doctrine is, to consider corporations as hav-" ing such powers as are *specifically granted* by the act of " incorporation, or as are *necessary for the purpose of car-" rying into effect the powers expressly granted,* and as *not* " *having any other.*" 2 Kent's Com. 239.

The power claimed is not *expressly granted* by the act of incorporation. And, even if this court could take judicial knowledge of facts not found in the case, still no " *necessity*" can be shown for its exercise. Whatever specious *pretences* of *"necessity"* may be set up, the fact is not to be disguised, that it is an attempt to convert a long enjoyed public highway into a mowing lot for use, or, upon a construction most favorable to the right claimed, into a flower garden, or pleasure ground for the more particular benefit and use of the " village of Woodstock." There is nothing about it possessing a single feature of what is included in any definition, legal or otherwise, of the term *"necessity."* It is a mere matter of ornament and of luxurious taste, intended to add to the beauty of the village, and to the value of the property immediately surrounding it—the expense to be drawn by tax-bill and warrant, by confiscation of property and by incarceration of the body, from those who have no interest in

the improvement, (if it be one,) and to the exclusion of the long enjoyed rights of the public at large. Fencing the common was no more necessary to carry into effect the powers granted, than that the village horses should be kept shod with gold, by a tax upon the grand list.

But, were it otherwise, this court cannot take judicial notice of any fact not found in the case. The fact that such " necessity" existed, or any fact, from which it could be legally implied, does not appear in the case. The fact of "necessity" is necessary to be proved on trial; without it, no jurisdiction is shewn in the corporation over the subject matter of the vote. That the corporation has such jurisdiction the court cannot *presume*, but it must be shown by proof, or the vote and all proceedings under it are *totally void*. " Nothing is to be intended in favor of jurisdiction." *Dunham & Daniels* v. *Trustees of village of Rochester*, 5 Cowen's R. 462; *Bates* v *Hazeltine et al.*, 1 Vt. R. 81.

Both the by-law and the vote of the tax under it, are illegal in this, that they are repugnant to a general statute law of the state, prohibiting the *erecting of any fence or other encroachment upon any part of the public highway*. Comp. Stat. p. 433–4, §16 and 17.

It is a well settled principle of law, that "all by-laws must " be subject to the laws of the realm, and subordinate to " them ; therefore, *if they are against the laws* and *statutes* " they are *void*." 3 Salk. R. 76, citing Hob. 24 and 5 R. 63. Angell & Ames on Corporations, p. 182. 1 Dane's Abridgment, p. 457, ch. 22, art. 1. *Town of Marietta* v. *Fearimg*, Ohio Cond. R. 848.

The defendants set up a by-law and vote of the corporation, as being *paramount* to the general statutes of the state.

But if the fencing of the common were open to none of the objections of illegality, in other respects, but were to be regarded as the ordinary and legal expenditures for the repair or improvement of highways, we deny that this corporation is the board, in whom is reposed, by law, the management and control of that expenditure ; or that any power is conferred upon them to raise money by tax for any highway purposes whatever ; or any power to lay out or discontinue roads, or widen or narrow streets, or in any manner to enlarge or circumscribe the public easement in highways. These

WINDSOR,
February,
1839.

Hutchinson
v.
Pratt et al.

powars are, by the general laws, lodged wtih the several towns and town officers, and their several duties minutely pointed out, and the mode established for laying, collecting, and expending taxes for those purposes. It is evident that the legislature contemplated no change of the law in this respect, within the territorial limits of the village, from the fact that no mention is made of such intent in the act of incorporation. Besides, section 9th of the act negatives any such intent, which enacts, "that the inhabitants and territory, in- " cluded in the limits of said village shall belong to said town " of Woodstock *in the same manner* as though this act had " not passed."

If the corporation may raise money by tax for one highway purpose, they can for all, and thus the minority of the village be doubly taxed, first as inhabitants of the town, for all highway purposes, both in and out of the village, and then again for all purposes which, in any time of excitement, a majority of the village may " deem it expedient" to vote.— Such powers cannot be transferred from the bodies in which, by the general laws, they are reposed, to inferior corporations, without an *express enactment* to that effect, or a legislative intention manifest beyond all doubt. *Beatty* v. *the Lessees of Knowler*, 4 Peter's R. 168. *Parsons* v. *Goshen*, 11 Pick. R. 396.

No arguments drawn from convenience can confer upon the corporation powers not granted. If more powers are needed more must be asked for.

If a tax may be raised for one purpose of *ornament* it may for any other; if for such a purpose, with more plausibility for the erection of buildings on the common for the *use* of the village, and by leaving foot paths only at intervals, the whole common might, in process of time, be covered, in the discretion of a majority of the corporation, by erections, for ornament or for use, by a tax upon the grand list. To prevent cattle from strolling into the village, gates at each avenue into the village *may* be "deemed expedient," and the public be subjected to the inconvenience of opening and closing them at each time of passing. The propriety of the rule of law, that such powers must be *expressly granted* to a corporation, before they can be exercised, is apparent.

The manifest intention of the legislature, in this act of in-

corporation, was to confer municipal powers, for the purpose of a more efficient and rigid police than could be exercised before over the streets and commons, to be exercised *under*, not in contravention of, the general laws upon the same subject.

The power to lay out, discontinue, widen, or narrow, or in any way alter or abridge the public easement in any street, highway, common or public landing place, we confidently assert, has not been exercised by any village, city, or other corporation, except on examination it is found that the power, with all minuteness, and in detail, and by *express words*, is given in the act of incorporation, or by some public law. Instance as to the city of Albany. See 6 Johns. R. 84. Also the city of Boston, 16 Pick R. 89, 90. *Wellington et al. petitioners*, 16 Pick. R. 89, 90, 91.

See, also, *Commonwealth* v. *Tucker*, 2 Pick. Rep. 44.— *Kean* v. *Stetson*, 5 do. 492. *Commonwealth* v. *Charlestown*, 1 Pick. R. 184–5–6. *Sprague* v. *Birdsall*. 2 Cowen's R. 420. 2 Kent's Com. 240. *Bangs* v. *Snow et al.*, 1 Mass. R. 185. *Stetson* v. *Kempton et al.*, 13 do. 272.— *Libby* v. *Burnham et al.*, 15 do. 144. *Warren bridge case*, (marginal note,) 11 Peters' R. 421. *Palmer* v. *Hicks*, 6 Johns. R. 133. *The People* v. *the Corporation of Albany*, 11 Wendell's R. 539. *McMullen* v. *City Council of Charleston*, 1 Bay's R. 46. *Zylstra* v. *Corporation of Charleston*, 1 do. 387, 396.

That the clause in the act of incorporation, enabling the corporation to make "by-laws and regulations" concerning the common, does not empower them to raise money by tax, for the purpose of erecting a fence or *"railing"* around it, see *Williams* v. *Brace*, 5 Conn. R. 190.

*O. P. Chandler* and *A. Tracy*, for defendants.

I. The manner in which the evidence was offered by the defendants was proper. The parol evidence was offered in connection with the record evidence, in aid of the record, and not to contradict it. If the record was sufficient, the parol evidence only confirmed it. If the records were illegal or defective, yet they were properly received to establish such defect, and thereby lay the foundation of secondary evidence.

The evidence being offered in connection, if a part only

was objectionable, the plaintiff should have designated such part, and moved the court to exclude it. But he objected to the whole. *Elliot* v. *Piersol*, 1 Peters' U. S. Rep. 338. *Beebe* v. *Bull*, 12 Wendell's R. 504.

The records of the meeting, holden on the 2d of May, are objected to, for the reason that the clerk, *pro tem.* who recorded the same, was not legally appointed, not having been designated by the trustees, agreeably to the 8th section of the article of incorporation.

This provision was not intended to apply to any merely occasional absence from the meeting.

Besides, it was merely directory to the trustees, that in such case, they *might* appoint, not making it imperative.

Neither does the act specify this as the only mode by which, in such case, a clerk might be appointed. The meeting was legally warned, and the power of appointing a clerk *pro tem.* was incident to the meeting. The trustees made no such designation. Had the meeting, therefore, no power to make such appointment?

If such appointment was illegal, yet he was clerk *de facto.* He held the office by color of an election, and his doings while acting, *colore officii*, are, as to third persons, valid. 2 Strange's R. 1090. Angell & Ames on Corp. 158.

The records are also objected to, because the clerk *pro tem.* was not sworn. We say that, within the spirit of the act, he was " sworn to the faithful discharge of his duty." He had but one duty to perform, to wit, to make a true record of the proceedings of that meeting. The time of taking the oath is not essential, so that he were sworn in the discharge of that duty. At the time of making the record, he was sworn to its truth. Here, the act of making the record and taking the oath were cotemporaneous. Nor is the form of the oath material. It could make no difference whether he swore faithfully to perform the duty, i. e. to make a true record,—or, at the time of making it, made oath that it was true. In either case, the object of the law is answered. The proceedings of road commissioners have been held valid, though they were not sworn until the time of making their return.

Again, we submit, that as between these parties, the re-

cord of the clerk is to be holden sufficient, without inquiring into the legality of his appointment or his qualification. He was clerk *de facto,* holding the office by color of an election, and as between third persons, his doings are valid. The rule of law is well settled, that where third persons are concerned in the acts of *public officers,* it is sufficient that they *acted* as officers. To adopt a different rule, would lead to great injustice, and endless confusion. This was a public corporation. Angell & Ames, on Corp. 8. 2 Kent's Com. 275. Consequently the clerk was a public officer. We admit that where the officers are themselves justifying, the rule is different. *People* v. *Collins,* 7 Johns. R. 549. *Wilcox* v. *Smith,* 5 Wendell's R. 233. *Fowler* v. *Beebe,* 9 Mass. R. 222. *Buckman* v. *Ruggles* 15 Mass. R. 180. *Stearns* v. *Thayer,* 1 Pick. R. 113. *Adams* v. *Jackson,* 2 Aikens' R. 147. 1 Equity Dig. 320. 4 U. S. Cond. R. 562. Dart. Col. Case.

If the record is defective and void, the vote raising the tax may be properly shown by parol evidence. The rule is understood to be, that secondary evidence may be reecived where the higher species does not exist or is not attainable by the party. *Stearns* v. *Thayer,* 1 Pick. R. 113, (above cited). *Bank U. S.* v. *Dandridge et al.* 6 Cond. U. S. R. 447, 9. 1 Starkie's Ev. 102, 391-2. 1 Swift's Dig. 770. *Bassett* v. *Marshall,* 9 Mass. R. 312.

II. Was this tax raised for a legal purpose?

By a continued dedication of the common, in question, to the public, it has ceased to be private property and is subject to the control of the legislature, as in case of highways, public streams, harbors, &c.

If it be said that the legislature had not the constitutional right to enclose the common, by reason of its interference with the public rights, we say such power has never been questioned. It is the same power they have conferred upon select men or road commissioners, in shutting up highways, &c., or to city corporations in shutting up, opening or widening streets, &c., or the acts of the general government in erecting piers and breakwaters.

Nor is this any obstruction of the rights of the public. The corporation are acting as agents of the public, and, by enclosing the common, they merely regulate the use, and render

it more subservient to the convenience of the public, by directing on which part of the common teams and carriages shall pass. The same power has been constantly exercised in our cities and villages throughout the country. There can be no doubt, then, that the legislature could delegate this power to the corporation.

Nor can there be any doubt that the legislature could constitute the village a public municipal corporation, dependent for its existence upon a vote of its members, conferring upon it such powers, and authorizing the majority to raise taxes to carry into effect its by-laws and regulations. This is strictly a public corporation, its officers public officers, its powers exercised for the public benefit.

The legislature, by the act, intended to confer this power. The corporation were " empowered to enact such by-laws and regulations as they should think proper, relating to the common and shade trees thereon."

What could be the authority given, if it did not extend to the regulation of the common, by directing upon what part of it people should pass with teams and carriages, providing a road upon each side, and enclosing the trees upon the central portion, by a fence, through which foot passengers could travel in any direction, and providing a foot walk through the centre ?

How could they better regulate the trees than by enclosing them with a fence ? If regulations of this description, were not contemplated, what were ?

If it be said the act did not intend to authorize any obstruction upon the common, we answer, that the act expressly recognizes the right to continue the, trees thereon, as well as the fence. But the fence is no obstruction. It is a mere regulation of the common for public convenience. 2 Johns. Ch. R. 324. 1 Equity Dig. 320. Sec 3, 8. *Pierce.* v. *Bertram,* 1 Cowper's R. 269. *Nightingale, Petitioner,* 11 Pick. R. 168. *Vanderbilt* v. *Adams,* 7 Cowen's R. 349. 352. *Coots* v. *Mayor of New York,* 7 do. 585.

The general power to enact by-laws and regulations is incident to all corporations, though, if not specially granted, the exercise of such power would be restricted to the general object of the grant.

Here such power is specially conferred, and certain ob-

jects particularly designated. It is believed, that any by-
law or regulation, in respect to these objects, might, within
the discretion of the corporation, be legally enacted, if not in-
consistent with the provisions of the charter, or contrary to
the general laws.

WILLIAMS, C. J.—In this case the defendants, who are
sued as trespassers, defend on the ground that they were
trustees of the village of Woodstock, that, acting as such in
pursuance of a vote of the village, they made out a rate bill
and warrant, for the collection of a tax, and that the act
complained of by the plaintiff, was done by the collector in
collecting the tax.   The defendants were trustees, duly elec-
ted, chosen and qualified.   The collector was also duly elec-
ted and qualified.   No question has been made as to them.
The points which are made in this case are, 1st. whether
the evidence was proper, or sufficient to prove that the tax
was voted?   2d.  Whether the tax itself was legal?   It ap-
pears that the meeting was legally warned, and no excep-
tions were taken to the proof of this fact.    When as-
sembled, it was competent for the inhabitants, thus legally
assembled, to transact any business specified in the warning,
unless the purposes for which they were warned, and the
business to be transacted were illegal.   Waiving for the pre-
sent the consideration, as to the legality of the business to
be transacted, and assuming that the tax was legal, we will
proceed with the inquiry, whether the evidence of this was
properly received.   And here, as the suit is not against the
corporation, nor against any officer who has omitted any duty
required of him, we cannot but be struck with the obvious
injustice, if not impropriety, of subjecting those to an action,
who have acted under a vote of the corporation, legally en-
acted, because either the corporation or the officers have
neglected their duty, in not recording their proceedings.
We think, however, that the evidence was properly received,
and was satisfactory, for either of the following reasons.

1. The doings of that meeting were placed upon the re-
cords, under the direction of the legal officer, to wit, N. Has-
kell, the village clerk, and that it has received the approba-
tion of the village, inasmuch as no measures have been
taken to correct the record in this particular, or to obliterate

WINDSOR,
February,
1839.

Hutchinson
v.
Pratt et al.

it.   The presence of the clerk is not necessary to the validity of a meeting, nor does it follow that he cannot record any proceedings unless he were present.   If it did, it would follow that if he were called out for any time whatever, the proceedings must stop until he returned, and the same would be true of all other clerks, whose duty it is to keep minutes and make entries of any proceedings.   The village clerk was the keeper of the records, and it was his duty to see that nothing was entered on them, but what he was fully satisfied was proper, and that no person, without his authority, should presume to enter any thing as records or minutes of the proceedings of the meeting.   He is made not only the keeper of the records, but also the certifying officer as to copies.   But in making the entries or records of the doings of any meeting, he acts as the servant or agent of the corporation, and I cannot doubt that it is competent for them to correct any mis-entries which he may have made, or to direct him so to do.   Further, it may be observed, that although a clerk may omit to record the proceedings of any meeting, it does not follow that the omission cannot be supplied.   A town clerk may be taken sick, or become incapable of making the neecssary records immediately after the meeting is held.   If a town clerk should thus be prevented by sickness and death, or any inevitable necessity, from perfecting his entries, and the reeting should be dissolved, can it be doubted that the town, at a subsequent meeting, could supply the omission by causing the proper entries to be made, and, when made and recognised by the town, that the record would be legal evidence ?   This subject appears to have been partially considered by the court in the case of *Exr's. of Booge* v. *Parsons, et al.* 2 Vt. R. 456.   It was there held that a copy of a deed found upon the book of records in the hand writing of the town clerk, who then had the custody of the books, but which wanted the certificate, or attestation of the clerk, was admissible in evidence as proof of the existence, contents and recording of the deed.   If this was admissible, as evidence of the title of real estate, the reasons are stronger for admitting such kind of proof as evidence of the proceedings of a corporation.

2.   We think it was competent for Chandler to keep the minutes of the proceedings, and record the same with the

consent of the actual clerk, and that his neglect to take the oath does not vitiate or avoid either his doings or those of the village.

It must, from necessity, be in the power of any corporation, whether public or private, to appoint a person as clerk, *pro tem.* for the purpose of making the entries of what was done by them. Such an appointment supposes the offices to be filled, but, as the duties required of such temporary officer are only ministerial, he is empowered, for the time being, to perform them, for and in behalf of the regular officer. Where there is a *vacancy* in the office, as in the case of a town clerk, the legislature have provided for the performance of the duties by other persons. "The trustees may designate one of their number to perform the duties," &c., and fill any temporary vacancy,—"in case of the death, removal, absence, or incapacity of the clerk." The object of this part of the act is to make provision for filling any *vacancy*, whether permanent or for a time, and cannot apply to a case where the clerk simply omits to attend a meeting. It cannot be considered a duty, arising under this clause of the act, for the trustees to meet and designate one of their number to perform the duties, if the regular clerk is detained from the meeting, or should ride out of the village. The appointment of Chandler, as clerk, *pro tem.* was made in pursuance of authority obviously belonging to the corporation, and conformable to the practice which has always prevailed in corporations of this nature; and it appears that he entered upon the duties of the office. Can it be objected to his proceedings or his records that he was not duly sworn? We think not, because it is not made a prerequisite to his entering upon the duties of the office. The act of 25 Car. 2, Ch. 2, required all officers, civil or military, to take the oath of allegiance and supremacy, under a penalty. A previous act of 13 Car. 2, Ch. 1., had required the taking of the oaths, and, in default thereof, declared the election void. Yet, notwithstanding the words were so strong, making the election void, it has been holden "that the acts of one in- "stalled in office, and executing the same without any ob- "jection to his authority, may be valid as to strangers, for " otherwise not only those who noways infringe the law, but " those, for whose benefit it is intended, might be sufferers for

" another's fault, to which they are no way privy." Hawk. P. C. 18, §3. If this principle were not adopted, and it were required to show that the clerk was sworn, it might become necessary also to show that the magistrate or other officer, who administered the oath, was himself sworn, or that the officer, who certified the appointment of the magistrate, had taken the necessary oaths. We think the nicety and strictness, formerly required on such subjects, have given way to more rational views, better comporting with the dictates of common sense and impartial justice. If the clerk himself were justifying, either on a *quo warranto*, or in an action directly against him, it might be necessary for him to show that he was eligible to the appointment, that it was made, and that he was duly sworn.

3. It appears to us, that in the absence of *all record*, it might be competent for the defendants to show by parol the proceedings of the meeting. Where there is a record, it cannot be added to or varied by parol, but the record will be deemed to be evidence of all that was done and that nothing more was done. Thus, in the case of *Taylor* v. *Henry*, 2 Pick. R. 403, which was a dispute between a person claiming to be town clerk and his predecessor, there was a record showing a meeting, and also a subsequent meeting, but it did not appear that the first was adjourned. Parol proof was not admitted, that the first meeting was adjourned, for that would be adding to and altering the record. But when there is an omission to make records, the rights of other persons, acting under or upon the faith of a vote not recorded, ought not to be prejudiced. And it would seem that the right in such case was reciprocal in the corporation and in those who claimed adversely to them. The reasoning of the court in the case of *Bank of the United States* v. *Dandridge*, 12 Wheaton's R. 64, is to the effect, that, inasmuch as from the fault of an individual whom they could not coerce, and over whom they had not the physical power to compel him to make his records, the higher proof could not be had, nothing but secondary evidence was left in their power, and they might avail themselves of such proof. The result is that upon either of the grounds mentioned, the evidence to prove the voting of the tax was proper and sufficient.

The next inquiry is, whether the tax was legal ; and this

involves an inquiry as to incidental and implied powers which seems destined to perplex, not only courts of justice, but legislative assemblies, and which, it would seem, can never be definitively settled. There is a tendency at the present day to run into extremes on every subject, and by pushing every argument to the utmost verge, and anticipating events which may, possibly, but without the least probability, happen, endeavor to draw absurd consequences, and, on that account, contend that the argument has no foundation. In theology, the doctrine of predestination has been carried so far as to deny altogether free agency, and the doctrine of free ageney has been extended so as to deny the omniscience of the Almighty. In law, it seems to be considered that, if it can be shown that a power may be abused, it is sufficient to prove that it does not exist. But it is a sound maxim that extremes prove nothing. In authorizing towns, districts or villages to raise money by tax, or to make by-laws, every possible contingency could not be anticipated, in which it would be just or proper to levy a tax. The authority is, therefore, always given in general terms, and the application of those terms, and the cases to which they may apply, are to be learnt, from time to time, as the occasions and exigencies of society may require. Towns are authorized to raise taxes for the support of the poor, for highways, and all other necessary and incidental charges. These words are very general, and under them it has been held that a town might raise money to pay the expense of innoculating for the kine pock, when the inhabitants had been exposed to the small pox, 2 Vt. R. 427. Also, to defend a law suit in which the town was interested, 6 Vt. R. 95. But if they should, under this authority, attempt to erect an alms house, at an expense of 50,000 dollars, or make a rail road at an expense of 40,000 dollars a mile, no one would contend that the tax would be legal. It is in season to decide whether a power has been improperly exercised or abused, when a case of such improper exercise or abuse is presented. The act of incorporation authorizes the village to tax themselves, to carry into effect any vote or by-law of the corporation.

4. They have power to enact such by-laws and regulations as they shall deem expedient, particularly such as relate to their streets, side walks and commons, and the shade and

WINDSOR,
February,
1839

Hutchinson
v.
Pratt et al.

ornamental trees thereon. Previously to the passing this act of incorporation, to wit, in the year, 1830, the common had been enclosed by a fence, by individuals, before which time, for about 40 years, it had been open. The act was passed in 1837. The vote, which is now the subject of controversy, was to instruct the trustees to procure stone posts for the repair of the common fence in the village, and to vote a tax of five cents on the dollar on the grand list, a part of which was for this purpose. Neither the probable expense of the fence, nor the tax appears to be exorbitant or extravagant. The by-laws, require the trustees to keep in repair the fence around the common, and to plant such shade trees as they may think proper. There is no necessity in this case of resorting to the question of incidental powers, as we apprehend the vote and by-laws were directly authorized by the act empowering the corporation to make by-laws relating to their common and the shade and ornamental trees thereon, and to raise taxes to carry into effect any legal vote or by-law, as conducive to, if not necessary for the preservation of the common and the trees thereon.

It is then objected, that enclosing the common with any fence is an encroachment on the highway, and a nuisance. If it is a nuisance, any one may remove it, and whoever erected, or continued it, is liable to indictment, and it would be a subject of regret that it was not noticed before the act of the legislature, incorporating the village, was passed. The common was then enclosed, and the legislature, instead of authorizing the corporation to make by-laws in relation to the common, shade and ornamental trees, would probably have inserted some provision for removing those encroachments. These public squares or commons are not strictly highways. They are public dedications for ornament and for use, and not for travelling with horses or teams. They are like highways in some particulars, that is, individuals cannot be permitted to appropriate them to their private use and erect buildings thereon, nor can any vote of a town or village authorize such building. But it by no means follows that they may not be enclosed with a fence, or that trees may not be set out thereon. The argument of the defendant would prove that ornamental or shade trees, inasmuch as they obstructed travelling on the common, would be an en-

croachment or nuisance. The purposes, for which these commons are dedicated, do not require nor authorize such a conclusion, but the contrary, and the legislature must have taken the same view, when they mentioned the shade and ornamental trees. Public squares, yards around public buildings, meeting houses, villages and academies frequently require to be enclosed, for the convenience of people on foot, and to prevent the horses, carriages and teams from cutting up the turf or disturbing those who are walking.

We can discover nothing in the vote to rebuild the fence, nor in the act of building such a fence around the common, which violates any existing laws of the state, nor any thing beyond the powers of the village, as established by the act of incorporation, nor any thing in the act of incorporation, which the legislature could not legitimately enact.

The result is, that we adjudge the tax to be legal and the judgment of the county court is affirmed.

COLLAMER, J., being an inhabitant of the village of Woodstock, did not sit in this case,