JEREMY COMPO v. THE JACKSON IRON COMPANY.

*Mining lease—Enforcement of agreement by lessee to convey an interest in the title, when perfected—Lapse of time—Truth of bill in equity—Accounting for rents and profits.*

An unincorporated joint stock association, formed for mining, took a lease of the mining location under a permit from the War Department, and gave a certain Indian a written agreement declaring that in consideration of his services in hunting ores he was entitled to a specified portion of the company's interest in the location. This agreement was ratified and confirmed on the books of the company, which afterwards passed, with its property, to a corporation organized mainly from the association. An act of Congress recognized the lease by giving occupants thereunder a right of pre-emption, and the incorporated company was allowed to enter the land and took a patent thereto. The Indian died, leaving a daughter to whose claims as his heir the attention of the president of the corporation was called, and he promised to settle with her if she had any rights. Offers were afterwards made for her interest, but the corporation finally refused to acknowledge that she had any rights. *Held*, that the assignee of the daughter could maintain a bill against the corporation to secure the rights alleged to have been contracted to her father by the original association.

Where the officers of an association have given a written agreement whereby the recipient is declared entitled to a specified portion of certain described land held by the association under a lease, and this agreement is ratified and confirmed on the books of the association, the objection that a subsequent verbal agreement to perfect the title and give him the interest, was void under the Statute of Frauds, was considered unimportant where this agreement also was ratified, confirmed and entered on the books, especially as the title was afterwards perfected, which fact, in itself, would have left the original agreement, if valid, sufficient to assure the same interest.

A lease of mining land from the War Department of the United States Government, purported to give permanent rights, including a right

of pre-emption. An act of Congress recognized the control of the War Department by providing for its transfer to the Treasury Department, and it also gave to occupants holding under War Department leases a right of pre-emption on certain conditions. *Held*, that this ratified such lease whether it was originally valid or not, and that one who held an agreement from the lessee entitling him to a specified share of the land when the lessee should obtain title, had a claim which followed the lessee's purchase, and obtained thereby an equitable title which the legal owner held in trust for him, and which passed by descent and could be transferred by assignment.

A written agreement signed by the officers of a mining association and declaring the other party thereto, for his services in hunting ore, entitled to a specified undivided share in certain described lands held by them under a lease, will be sustained as a valid agreement and declaration of trust for the designated interest in the title when that shall have been acquired by the lessee.

Lapse of time alone does not necessarily operate as a disseizin in law or in equity.

On appeal from the dismissal of a bill on demurrer, the bill will be assumed to be true for the purposes of the hearing, in the absence of any answer.

An accounting for past rents and profits may be limited by a shorter period than the claim to the land itself.

Appeal from Marquette. Submitted June 21. Decided June 27.

BILL to establish equitable ownership, and for an accounting. Dismissed below on demurrer. Demurrer overruled on appeal and case remanded for answer.

*F. O. Clark* for complainant. A demurrer admits the truth of the statements of facts in the bill: 1 Barb. Ch. Pr. 106; High on Inj. § 941; *Schwarz v. Sears* Har. Ch. 440; *Titus v. Mabee* 25 Ill. 257; but not matters of legal construction: *Le Baron v. Shepherd* 21 Mich. 263; Puterbaugh's Pleadings 98, 99; *Stow v. Russell* 36 Ill. 18; it. is immaterial whether the permits and leases made by the War Department were based upon proper authority or not, for by Act of Congress such permits and leases were ratified and confirmed as a valid claim in the hands of those in possession

of lands under them, and gave to the possessor the first right to pay for said land at $2.50 per acre, and obtain an absolute title: 9 Stat. at L. 146; *Hanchett v. McQueen* 32 Mich. 24, 25; *Lamb v. Davenport* 18 Wall. 307; *Taymouth v. Koehler* 35 Mich. 22; *Cook v. Tullis* 18 Wall. 332; *Stark v. Starr* 94 U. S. 477; *Swain v. Seamens* 9 Wall. 254; and one who holds under such a lease and agrees to convey an interest when he perfects his title is estopped from denying the validity of the lease: *Swain v. Seamens* 9 Wall. 254; 1 Washb. R. P. 453, § 6; *Ballou v. O'Brien* 20 Mich. 319; the vendee, in a land contract, is the *equitable owner* of the land, and the vendor holds the land in *trust*, or rather the legal title for him: *Wing v. McDowell* Walk. Ch. 175; *Fitzhugh v. Maxwell* 34 Mich. 138; Angell on Limitations (5th ed.) 439, note; *Stewart v. Brown* 2 Sergt. & R. 461; *Moffatt v. Buchanan* 11 Humph. Tenn. 372; lapse of time *is not of itself sufficient* to bar in equity; delay may be excused: *Abbott v. Godfroy* 1 Mich. 186; *Campau v. Chene* 1 Mich. 410; *Bailey v. Jackson* 16 Johns. 214; *Jackson v. Slater* 5 Wend. 295; *Jackson v. Pierce* 10 Johns. 417; *Nelson v. Carrington* 4 Munf. 532; *Baird v. Wolfe* 4 McLean 549; 2 Washb. R. P. (3d ed.) 340; a lease of the right to mine, coupled with the right to pay for the land when the same should be surveyed, is more than a simple license, and is assignable: *Harlow v. L. S. I. Co.* 36 Mich. 121; *Caldwell v. Fulton* 31 Penn. St. 476, 477; *Stockbridge Iron Co. v. Hudson Iron Co.* 107 Mass. 290.

*W. H. Maynard, C. I. Walker* and *Francis J. Wing* for defendant. The right to occupy and mine is in the nature of a license and not assignable: 1 Washb. R. P. 414; *Jackson v. Babcock* 4 Johns. 418; *Cowles v. Kidder* 24 N. H. 364; *Prince v. Case* 10 Conn. 382; *Frisbie v. Whitney* 9 Wall. 187; equity refuses to aid stale demands: *Smith v. Clay* Amb. 645; 2 Story's Eq. § 1520; *Badger v. Badger* 2 Wall. 87; *Sullivan v. Portland R. R.* 94 U. S. 811; *Royal Bank v. Gd. Junc. R. R.* 125 Mass. 494; even where based on implied or constructive trusts: *Clegg v. Edmondson* 8

De G., M. & G. 814; Ang. on Limitations §§ 166, 408; the defences of laches and staleness may be raised by general demurrer: *McLean v. Barton* Har. Ch. 279; *Campau v. Chene* 1 Mich. 410; *Loomis v. Brush* 36 Mich. 40; *Shorter v. Smith* 56 Ala. 208; *Campau v. Van Dyke* 15 Mich. 371; *Newberry v. D. & L. S. Iron Co.* 17 Mich. 141; *Russell v. Miller* 26 Mich. 1; *Mc Vickar v. Filer* 31 Mich. 304; *Ritson v. Dodge* 33 Mich. 463; *Harlow v. L. S. Iron Co.* 41 Mich. 583; *Dickinson v. Seaver* 44 Mich. 630; *Castner v. Walrod* 83 Ill. 174; parties cannot wait until property is developed before asserting a claim thereto: *Pendergast v. Turton* 1 Y. & C. Ch. 110; *Hart v. Clarke* 19 Beav. 349; *Twin Lick Oil Co. v. Marbury* 91 U. S. 592.

CAMPBELL, J.    Compo, as assignee of Charlotte Kobogum, an Indian woman, daughter and heir of Marji Gezick, a deceased Indian, brought a bill to obtain relief under the following circumstances:    Defendant is the corporate successor and under the statute subject to the liabilities of a former company originally incorporated in 1848 as the Jackson Mining Company, and afterwards changed to the Jackson Iron Company.    That corporation was organized chiefly by, and obtained the mining property of, a previous unincorporated joint-stock company acting through several trustees, and known as the Jackson Mining Company. This suit is brought to secure the rights alleged to have been contracted by the original association to be given to Marji Gezick, but never formally conveyed or otherwise assured to him or to the daughter, who succeeds him.

The association was made for the purpose of mining on Lake Superior.    Marji Gezick discovered and made known to them the iron mine in Marquette county, which they have always worked as their mining property, and they had agreed to pay him for his services.    The association having procured a War Department permit, and in pursuance thereof having taken out a lease of the mining location which contained a section of land, thereupon gave to Marji Gezick a written agreement dated May 30, 1846, signed by the presi-

dent and secretary, which declared that in consideration of
his services in hunting ores of location 593 he was entitled
to twelve undivided thirty-one hundreths parts of the inter-
est of the Jackson Mining Company in said location 593.

This agreement was ratified and confirmed on the books
of the company, which it is averred passed to defendant.
It is also averred that a subsequent verbal agreement to per-
fect the title at their own expense as soon as possible and
give him that interest was also ratified and confirmed and
entered on the books.

An objection made to this alleged verbal agreement as
void under the Statute of Frauds does not appear to us of much
importance because by the alleged ratification it ceased to
rest merely in parol, and for the further reason that as the
title was actually obtained it left the original agreement, if
valid, sufficient to assure the same interest.

Subsequently the incorporated company by virtue of the
lease was allowed to enter the land at $2.50 an acre, and a
patent was issued December, 1851. Since that time the
land has been used for mining purposes and the enterprise
has been very successful.

Marji Gezick, who is alleged to have been an uneducated
Indian, died in or before the year 1857. The bill alleges
that his rights were recogized during his life. That after
Charlotte Kobogum succeeded to his interest Mr. Everett, a
member of the original association and one of its trustees,
saw the president of the company in New York, where the
office was located, on her behalf and showed him the original
agreement, and on search they found its ratification on the
books, and he promised to look up the matter and settle with
her if she had rights. Subsequently offers deemed inade-
quate have been made for her interest, but recently the
company refuses to acknowledge her rights.

The defendant demurs, and relies on various grounds,
including lapse of time, and various grounds of insufficiency
of title shown.

The original contract was in writing, and contained a defi-
nite description of the land, and of Marji Gezick's interest

in it, and the consideration on which it rested, which was a valuable one. There is no difficulty that we can discover in holding this a valid agreement and declaration of trust for the title if there was any title which it referred to.

It is claimed, however, that the right then existing was a mere license, and not the subject of contract or grant. It purported, however, to give permanent rights, including a right of pre-emption. It was not shown on the argument, and is not very important, in what way these lands came, as they actually did come, under the control of the War Department. By an act approved March 1, 1847, Congress recognized this by providing for transfer of their management and control to the Treasury Department. 9 U. S. Stat. at L. 147. The same law provided for their survey and sale, and gave to occupants under War Department leases a pre-emption to be exercised during the existence of the lease, on condition that the entire tract should be purchased, and compliance made with the terms of the leases. There can be no doubt, we think, that the purchase of the land under this act depended on the leasehold rights, and was is pursuance of the pre-emption right thereby granted, and that the Act of Congress ratified the lease whether originally valid or not.

This being so, we think that whatever right Marji Gezick had in the lease followed it into the purchase and became attached to the title. There is nothing in the bill indicating that any demand was made on him to contribute his small share of the purchase money, which would be about six or seven dollars, provided the land was not paid for out of the profits, which is quite possible.

This gave him an equitable title to the undivided interest described, which the legal owners held in trust for him. This title passed to his daughter, and she could transfer or enforce it as an interest in fee, unless barred by lapse of time.

There is nothing in the bill which shows that this title has been disputed long enough to bar her rights. Lapse of time alone will not necessarily operate as a disseizin in law

or in equity, and the bill does not indicate any considerable delay since the company gave up negotiating, and denied her rights. The defendant has not answered, and on the present hearing we must assume the bill to be true. There is enough in it to call upon defendant to put in a defence and leave the merits to be tried on the facts. It is possible that the accounting for past rents and profits may be limited by a shorter period than the claim to the land itself. We cannot anticipate what questions may be raised when the facts all come out.

The demurrer was improperly sustained. It must be overruled, with costs of this court and the usual costs of hearing on demurrer in the court below.

The case will be remanded, and leave given to answer in twenty days, unless time is further extended.

GRAVES, C. J. and MARSTON, J. concurred.

COOLEY, J. I agree that the bill made such a case as entitled the complainant to an answer.