[No. 3190.  Decided April 7, 1900.]

# JOHN T. LONG, *Appellant*, v. PIERCE COUNTY, *Respondent*.

### COUNTIES—CONTRACTS BY COMMISSIONERS—ABSENCE OF RECORD—EVIDENCE.

A contract with the board of county commissioners waiving certain conditions respecting claims by the contractor for extra labor and material necessary in the erection of a court house may be proved by parol, although the law requires the proceedings of the board to be kept in writing, where the board has failed to cause a record thereof to be made, when the law makes no provision as to the mode of contracting by boards of county commissioners nor as to the manner of proving their contracts.

### CONTRACTS—MODIFICATION—CONSIDERATION.

A consideration for the modification of an original agreement by a subsequent oral agreement is unnecessary, inasmuch as the original consideration attaches to and supports the modified contract, which becomes a substitute for the contract as originally made.

### LIQUIDATED DAMAGES—WAIVER—BREACH OF CONDITION PRECEDENT.

A provision in a contract for liquidated damages in case the contractor shall fail to complete a building by a stipulated date is unenforceable, where the contract contains a condition precedent that possession of the premises shall be given, and lines and levels furnished him on or before a certain date, and the owner has failed to perform that part of the agreement within the required time.

### SAME—LIABILITY FOR ACTUAL DAMAGES ONLY.

In such a case, where the contractor enters upon the work after the failure of the owner to comply with the precedent condition as to putting the contractor in possession and furnishing lines and levels on or before a stipulated date, the contractor merely obligates himself to complete the building within a reasonable time, and, upon failure so to do, is liable only for actual damages suffered by the owner and cannot be made to respond in liquidated damages, although the contract provides therefor.

BUILDING CONTRACT—RECOVERY FOR EXTRA WORK—CONCLUSIVENESS
    OF ARCHITECT'S DECISION—INSTRUCTIONS.

In an action by a contractor to recover for extras which he
was required to place in a building, pursuant to the detailed
plans and working drawings made by the architects after the
contract was made, which, it was alleged, necessitated extra work
and extra material in excess of what was indicated by the plans
and specifications upon which his contract was based, an instruc-
tion to the jury is erroneous, which charges them "that upon all
questions as to the true meaning of drawings and specifications,
the amount to be allowed plaintiff for extras or alterations made,
the decision of the architects is final and conclusive," when the
only provision in the contract on the subject of the finality and
conclusiveness of the decisions of the architects relates to ques-
tions arising concerning the meaning of the drawings and
specifications, and the contract nowhere makes their decision
final as to the value of extras.

SAME.

In such an action, it is erroneous to charge the jury that the
contractor could not claim for extra work not accepted by the
architects, unless it was done in pursuance of a written order of
the architects, when the provision of the contract authorizing the
contractor to proceed with alterations upon the written order of
the architects, has reference only to such alterations as both
parties agree to be alterations, and has no reference to work
required of the contractor by detail drawings, which he claims
to be in addition to the work required by the original drawings
and specifications, but which the architects claim is in accord-
ance therewith.

SAME—EVIDENCE.

Under a provision in a building contract for a county court-
house, which required the contractor to give notice in writing to
the architects of all claims for additional work within ten days
of the beginning of such work, letters to the architects by the
contractor setting up claims for extras, are a sufficient compli-
ance with the requirements of the contract as to notice,
although general in their terms, where they are not too
indefinite to put them on inquiry as to the nature of the claims
of the contractor; and in an action against the county it is error
to exclude the letters from admission in evidence, on the ground
that they are hearsay, and self-serving declarations.

SAME—ACCEPTANCE OF BUILDING UNDER SUPPLEMENTAL CONTRACT—
WAIVERS.

Where, after the completion of a court house, there was a
dispute between the county and the contractor over a settlement
of their claims against one another, and a supplemental contract
was made, whereby the county was to have the immediate use
and occupancy of the building as far as completed; and the
architects were to furnish the contractor a full statement of mat-
ters claimed by them to be incomplete, or not in accordance with
the contract, the particulars thereof, and the damages resulting
therefrom, with all other claims on behalf of the county for non-
performance of the contract; and the contractor was to furnish
the county an itemized statement of his claim for extras
under the contract, the value thereof, with the authority for per-
forming or furnishing such extras, and if they could not agree
either party should have the right to apply to the courts; and
the county should be considered as having accepted the build-
ing "subject to its rights to claim damages for such work done
or materials used in said building claimed by them not to be in
accordance with the original plans and specifications, and any
other claims for non-performance, set forth in such statement,"
filed by the architects, such supplemental contract does not
waive the county's right to claim damages for any defect of con-
struction not contained in the architects' statement of defects;
nor does it constitute a waiver of the right of the county to insist
that the contractor show that his claim for extras had been pre-
sented to the architects in writing in accordance with the terms
of the original contract.

SAME—BIAS OF ARCHITECTS—EFFECT OF BOND TO PREVENT EXPENDI-
TURE.

Where a building contract for the construction of a court
house provided that all differences between the contractor and
the county should be referred to the architects and their decision,
if just and impartial, should be final and conclusive, such provi-
sion would be inoperative against the contractor and he would
not be compelled to show that the architects' decisions were un-
just or partial, if, without his knowledge at the time of making
his contract, they had given a bond to the county stipulating
that the cost of the building should not exceed a certain sum.

SAME—RESTRICTION ON CONTRACTOR AS TO SOURCE OF MATERIALS—
DAMAGES.

Where the specifications in a building contract require the
contractor to use a particular quality of stone, the fact that at

the time the contract was entered into there was but a single quarry open from which such stone could be procured, would not restrict the contractor from procuring the same grade of stone from other quarries subsequently opened; and any damages suffered by him by reason of the refusal of the architects for a long time to permit the use of stone from other quarries are recoverable.

SAME—ADMISSIONS OF COUNTY BOARD—ADMISSIBILITY IN EVIDENCE.

A letter from the board of county commissioners to the contractor who had constructed a court house for them, reciting that the board was ready to settle with him upon the basis of a sum named therein, is admissible in evidence as a question of fact for the jury, to pass upon whether the offer was made merely for the purpose of effecting a compromise, or as an admission of what was due the contractor.

Appeal from Superior Court, Pierce County. — Hon. THOMAS CARROLL, Judge. Reversed.

*Sullivan & Christian,* for appellant.

*George H. Walker,* Prosecuting Attorney (*Walker & Fitch* and *John A. Shackleford,* of counsel), for respondent:

Upon the point that the alleged parol agreement for a waiver of certain conditions of the contract was not admissible in evidence, counsel cite *Arnott v. Spokane,* 6 Wash. 422; *Sawyer v. Manchester, etc., R. R. Co.,* 62 N. H. 135 (13 Am. St. Rep. 541); *Maupin v. Franklin County,* 67 Mo. 327; *Dennison v. County of St. Louis,* 33 Mo. 168; *Louisville v. McKegney,* 7 Bush, 651; *Polly v. Hopkins,* 74 Tex. 145; *Crump v. Board of Supervisors,* 52 Miss. 107; *Bridges v. Supervisors,* 58 Miss. 817; *Pooley v. Buffalo,* 36 N. Y. Supp. 796; *Gilbert v. New Haven,* 40 Conn. 102; *Moor v. Newfield,* 4 Me. 44; *Cabot v. Britt,* 36 Vt. 349; *Covington v. Ludlow,* 1 Metc. (Ky.) 295; *People ex rel. Burr v. Zeyst,* 23 N. Y. 140; *Reppy v. Jefferson County,* 47 Mo. 66; *Crenshaw County v. Sikes,* 21 South. 135.

Upon the point that the provision for liquidated damages was enforceable by the county, counsel cite *Reichenbach v. Sage,* 13 Wash. 364; *Allison v. Dunwody,* 100 Ga. 51 (28 S. E. 651); *Heard v. Dooly County,* 28 S. E. 986; *Peekskill, etc., R. R. Co. v. Village of Peekskill,* 47 N. Y. Supp. 305; *Taylor v. Smith,* 49 N. Y. Supp. 41; *Kunkel v. Wherry,* 42 Atl. 112 (69 Am. St. Rep. 802); *Harris County v. Donaldson,* 48 S. W. 791; *Everett Land Co. v. Maney,* 16 Wash. 552 (48 Pac. 243); *Ferrier v. Knox County,* 33 S. W. 896; *Manistee Iron Works Co. v. Shores Lumber Co.,* 65 N. W. 863; *Collier v. Betterton,* 29 S. W. 467; *Hennessy v. Metzger,* 38 N. E. 1058 (43 Am. St. Rep. 267); *Sanford v. First National Bank,* 63 N. W. 459; *White v. School District,* 28 Atl. 136; *De Graff v. Wickham,* 57 N. W. 420; *Hutton v. Gordon,* 23 N. Y. Supp. 770; *Wallis Iron Works v. Monmouth Park Ass'n,* 26 Atl. 140; *Nilson v. Jonesboro,* 20 S. W. 1093; *Lincoln v. Little Rock Granite Co.,* 19 S. W. 1056; *Malone v. Philadelphia,* 23 Atl. 628; *Kelso v. Reid,* 23 Atl. 323 (27 Am. St. Rep. 716); *Texas & St. L. Ry. Co. v. Rust,* 19 Fed. 239.

The opinion of the court was delivered by

FULLERTON, J.—On the 19th day of September, 1890, the appellant and respondent entered into a written contract, by the terms of which the appellant agreed to furnish all the necessary materials, and erect and finish for the respondent a court house and jail, for the consideration of $270,000. The contract provided that the work should be performed under the direction and to the satisfaction of Proctor & Dennis, architects, acting as agents of the respondent, who should, "as the work proceeds," furnish estimates of the value of the work done and material furnished, upon which the contractor was to be paid eighty-five per cent. of the value of same; and, upon the comple-

tion of the building to the satisfaction of the architects, they were to so certify, and final payment was thereupon to be made to the contractor. The contract contained the following clauses:

" 2d. Should it appear that the work hereby intended to be done, or any of the matters relative thereto, are not sufficiently detailed or explained on the said drawings, or in the said specifications, the contractor shall apply to the architects for such further drawings or explanations as may be necessary, and shall conform to the same as part of this contract, so far as they may be consistent with the original drawings, and in event of any doubt or question arising respecting the true meaning of the drawings or specifications, reference shall be made to the architects, whose decision thereon, being just and impartial, shall be final and conclusive. It is mutually understood and agreed that all drawings, plans and specifications are and remain the property of the architects.

" 3d. Should any alterations be required in the work shown or described by the drawings or specifications, a fair and reasonable valuation of the work added or omitted shall be made by the architects, and the sum herein agreed to be paid for the work according to the original specification shall be increased or diminished as the case may be. In case such valuation is not agreed to, the contractor shall proceed with the alteration, upon the written order of the architects, and the valuation of the work added or omitted shall be referred to three (3) arbitrators (no one of whom shall have been personally connected with the work to which these presents refer), to be appointed as follows: one by each of the parties to this contract, and the third by the two thus chosen; the decision of any two of whom shall be final and binding, and each of the parties hereto shall pay one-half of the expense of such reference.

" 4th. The contractor shall, within twenty-four hours after receiving written notice from the architects to that effect, proceed to remove from the grounds or building all materials condemned by them, whether worked or unworked, or take down all portions of the work which the architects shall condemn as unsound or improper, or as

in any way failing to conform to the drawings and speci-
fications, and to the conditions of this contract.    The con-
tractor shall cover, protect and exercise due diligence to
secure the work from injury, and all damage happening
to the same by his neglect shall be made good by him.

" 6th.    The contractor shall and will proceed with the
said work, and every part and detail thereof, in a prompt
and diligent manner, and shall and will wholly finish the
said work according to the said drawings and specifica-
tions and this contract, on or before the fifteenth day of
September, in the year one thousand eight hundred and
ninety-two (provided that possession of the premises be
given the contractor, and lines and levels of the building
furnished him, on or before the 15th day of September,
in the year one thousand eight hundred and ninety), and
in default thereof the contractor shall pay to the owner
seventy-five dollars for every day thereafter that the said
work shall remain unfinished, as and for liquidated dam-
ages.

" 7th.    Should the contractor be obstructed or delayed
in the prosecution or completion of the work by the neg-
lect, delay or default of any other contractor; or by any
alteration which may be required in the said work; or by
any damage which may happen thereto by fire, or by the
unusual action of the elements, or otherwise; or by the
abandonment of the work by the employees through no
default of the contractor, then there shall be an allowance
of additional time beyond the date set for the completion
of the said work; but no such allowance shall be made
unless a claim is presented in writing at the time of such
obstruction or delay.    The architects shall award and cer-
tify the amount of additional time to be allowed; in which
case the contractor shall be released from the payment of
the stipulated damages for the additional time so certified
and no more.    The contractor may appeal from such
award to arbitrators constituted as provided in Article 3d
of this contract.

" 14th.    It is further mutually agreed between the par-
ties hereto that no certificate given or payment made un-
der this contract, except the final certificate or final pay-
ment, shall be conclusive evidence of the performance of

this contract, either wholly or in part, against any claim of the owner, and no payment shall be construed to be an acceptance of any defective work."

On entering in to the contract the appellant proceeded with the work, and on the 8th day of May, 1893, notified the architects that the building was ready for their acceptance. The architects refused, on the ground that the building had not been completed in accordance with the contract, to issue the final certificate. After some controversy, and for the purpose of settling their differences, the appellant and respondent entered into a supplemental agreement, dated the 21st day of June, 1893, which recited that the appellant claimed that he had fully completed his contract; that some question had arisen between the parties as to the construction and interpretation of the plans and specifications, and as to whether or not the building had been completed in accordance therewith; that, notwithstanding the conflicting claims between the parties, the building was in a situation for occupancy and at least partial use by the respondent; "that it is desired by all parties hereto to expedite the settlement of all court house matters, and lessen the expense of all parties to such settlement, and establish the claims of the first party for damages for nonperformance, and those of the second party for extras, and all other claims that may justly arise on behalf of either of said parties under said contract and matters pertaining thereto;" and proceeds in part as follows:

" Now, therefore, It is agreed by all parties hereto, that the party of the first part shall have the right to use and occupy any and all portions of said court house; that such occupation and use by said party of the first part shall not prevent the party of the second part from completing or finishing any parts or portion of said court house that may

22—22 WASH.

be ascertained to be incomplete, and the second party desires to complete.

" It is further distinctly understood and agreed by all parties hereto that such possession and use shall not in any way be an acceptance of such court house, or any part or portion thereof, as being constructed and completed in accordance with the conditions of said contract and the plans and specifications belonging thereto, nor shall the delivery thereof be construed to be a waiver on behalf of the party of the second part of any rights or claims for compensation under said contract or for extras added thereto, but that all matters in dispute between the parties hereto as to the completion or construction in accordance with the contract, and the damages for the failure to so construct and all manner of claims by the party of the first part for non-performance of said contract, or any claims for extra compensation, or any claims that the party of the second part may have under said contract, shall in no way be affected by such occupation and use, but shall be left for further and final settlement hereafter; provided, that for the further expediting the final settlement of all matters, it is agreed that each of the parties hereto furnish the other, within eight days from the date hereof, a full and complete statement of all their claims under said contract, or connected therewith, to wit:

" The party of the first part shall, through its architects, furnish the party of the second part a full statement of those matters in connection with the said court house claimed by them to be incomplete or not in accordance with the contract, plans and specifications, the particulars thereof, and the damages resulting therefrom, with all other claims on behalf of said first party for non-performance of said contract, together with such extras as are admitted to be allowed by the party of the first part.

" The party of the second part shall furnish to the party of the first part an itemized statement of his claim for extras under said contract, the value thereof, with the authority for performing or furnishing such extras, together with any other claims that he may have under said contract.

" It is further agreed that if, within thirteen days after the above statements have been furnished to the respective parties hereto, no amicable settlement has been arrived at by said parties that either of said parties shall have the right to apply to the courts for an adjudication thereof.

". . . and if said statement is filed as aforesaid by the said party of the first part within said time, then such statement made by said architects shall be considered as a final certificate by them that the building is completed to their satisfaction except as to those matters enumerated in their said statement furnished as aforesaid; and then if the parties hereto do not reach an amicable adjustment within the said thirteen days, the party of the second part shall have the right to have the said matters in dispute adjudicated in the courts without further certificate from said architects, provided party of the second part shall have filed his said statement, the party of the first part herein, filing the said statement, as aforesaid, being considered to have accepted the said building subject to its rights to claim damages for any work done or materials used in said building claimed by them not to be in accordance with the original plans and specifications and any other claims for non-performance, set forth in such statement.

" It is also expressly agreed that all demurrage claimed by the party of the first party against the party of the second part because of the delay in the completion of said building, is waived from time of signing this contract and entering into possession thereunder. And the said party of the second part shall not be concluded from showing that he was entitled to an extension of time in which to complete the said building beyond the time prescribed in the said original contract, because of the fact that the architect has not awarded and certified the amount of additional time which might be allowed under said contract as to any extension of time claimed by the said party of the second part, and he shall have the right to adjudicate such matters in court, the same as if there was no provision in said contract for an appeal from the architects on such questions to arbitrators, as provided in Article 3 of the original contract."

Within the time limited in the supplemental agreement, each of the parties thereto made out and served upon the other their claims required by its terms; and after endeavoring to reach a settlement, and failing therein, the appellant instituted the present action. In his complaint the appellant alleged the execution of the foregoing contracts, and his compliance therewith; that the building was not completed until about the 29th day of May, 1893, because of various delays, which he enumerated; that at the request of the respondent, and under the direction of the architects, he furnished a large amount of extra materials and performed extra work to the value of $73,147.75; that the respondent waived orally and in writing that part of the original contract which required him to make a claim for additional or extra work within ten days of the beginning of such work, and also those provisions of the contract which required appellant to furnish in writing a claim for such additional work and extras; that the architects were, and that each of them was, pecuniarily interested in the result of the contract for the reason that they had as principals, with others as sureties, prior to the commencement of said work, executed a bond to the respondent in the sum of $25,000, conditioned that the building, completed, should not cost respondent to exceed $300,000, and that he had no knowledge of the execution of said bond at the time he entered into the original contract with the respondent, agreeing to submit matters of differences that might arise between them to the decision of the architects; that the architects unjustly, arbitrarily, and wrongfully refused to allow him reasonable, fair, or just compensation for his extra work and materials; and that he demanded arbitration upon all of said matters, as provided in the contract, but that said architects, for and with the intention of defrauding and injuring him, refused

to submit any of such matters to arbitrators. He further alleged that he was required by the respondent and its architects to procure the Wilkeson stone, required by the plans and specifications to be used in the construction of said building, from one firm, and that the respondent refused for a long time to allow him to get Wilkeson stone from any other firm, although the Wilkeson stone which he offered and was ready to furnish was equal to, and of the same quality as, the Wilkeson stone the architects had already permitted appellant to use in the construction of the building; and that by reason of these acts on the part of respondent he was damaged, because of delay in the construction of the court house, and the extra expense he was put to, in the sum of $20,000. He alleged that the respondent awarded other parties contracts in connection with the construction of the building which he was entitled to perform, as alterations and additions, by the terms of the original contract, whereby he was deprived of profits which he would reasonably have made in the sum of $542.82. He also alleged a balance due upon the original contract price of $25,706.59; making a total sued for of $119,397.16.

The respondent answered, putting in issue the material allegations of the complaint; admitting, however, the execution of the contracts, and the execution of the bond by architects Proctor & Dennis; and alleging that the appellant had knowledge of the execution of such bond, prior to the execution of his contract. It alleged affirmatively that it had paid the appellant upon the original contract $250,631.90; that, in compliance with the terms of said contract and supplemental contract, the respondent caused to be made by the architects, Proctor & Dennis, and furnished to appellant, a statement of the matters in connection with the court house claimed by the architects to be

incomplete, so far as it was able to obtain at that time, and
the damages resulting therefrom.    It set forth a copy of
the architects' statement, which showed the total amount
of extras which they had allowed to be of the value of
$3,157.70, and a total of omissions of $5,690.23, leaving
a balance due the county for omissions over extras of
$2,532.53.    The report further showed that the contractor
had made changes, and had performed work which the
architects claimed were not in accordance with the plans
and specifications, for which there should be deducted
$12,843.33.    The architect Proctor claimed for demur-
rage $6,750, leaving a balance due the contractor of $18,-
067.07.    The report was not concurred in by the other
architect, Dennis, as to the amount charged for demur-
rage.    He claimed $16,350 should be charged therefor,
leaving a balance due the contractor of $8,467.07.    The
respondent further alleged that the architects had given
an erroneous legal construction to the contract, as to what
time should be extended the appellant to complete the
building, and for omissions and extras, and alleged that
certain other items should be allowed as credits to it for
omissions which it enumerated, making a total of
$7,754.28; and that it was entitled to demurrage for the
non-completion of the building for the specified time from
the 15th day of September to the 6th day of June, 1893,
less eight days only, which it credited because it was not
"able to give to plaintiff [appellant] the lines and levels
for the foundation of said building for a period of eight
days after it should have done" by the terms of the orig-
inal contract; the amount claimed for demurrage being
$19,125.    It also set out a new list of extras, giving the
appellant credit for $3,830.33; and, in its final summary,
alleged a balance to be owing from appellant to respondent
of $3,337.41.    No judgment over was asked for this

sum.   The appellant replied, putting in issue the new
matter alleged in the answer.   He admitted that the lines
and levels were not furnished to him by the respondent
until eight days after they ought to have been furnished,
and affirmatively pleaded that the respondent did not de-
liver to the appellant possession of said premises at the
time agreed upon, nor before the 1st day of November,
1890, and that respondent was estopped to claim demur-
rage because of these facts.   On the issues made a trial
was had, resulting in a verdict and judgment for the
appellant in the sum of $233.43 and costs.   From that
judgment this appeal is taken.

1.   It was shown that the detail or working drawings
for the building were prepared by the architects after ap-
pellant's bid had been accepted and the contract entered
into, and that the appellant made the estimates upon which
his bid was based from the plans and specifications which
alone were submitted to him.   The appellant contended,
and his evidence tended to prove, that these detail draw-
ings were much more elaborate in design than were the
original drawings, plans, and specifications; requiring not
only a higher and more expensive class of labor, but also
a more expensive and better quality of material, and neces-
sitating a longer time in which to do the work.   The larger
part of appellant's demand for extras is based upon this
claimed difference between the detail drawings and the
plans and specifications.   When the appellant offered evi-
dence to substantiate his claim, the respondent objected to
its admission unless it be first shown that the work was
done in pursuance of a written order from the architects,
and that a notice of the claim had been made to the archi-
tects, in writing, within ten days of the beginning of such
work.   The trial court, conceiving it not within his power
to direct the order of proof, admitted the testimony after

counsel for the appellant had promised to show either that a written notice of the claim was made, or that such notice was waived by the respondent.     In pursuance of his promise to show a waiver on the part of the county, the appellant offered oral proofs tending to show that at a regular meeting of the board of county commissioners, held shortly after the commencement of the work, all the members being present, it was orally agreed between respondent and the appellant that the provisions of the original contract, requiring the contractor to give notice in writing of all claims for extra work within ten days of the beginning of such work, and all other provisions relating to notices in writing should be, and were, waived and abandoned, and that appellant should be paid for all extra materials furnished, and extra labor performed by him, whether furnished or performed at the request of the architects, or of one William Box, whom the respondent had appointed to superintend the construction of the building, and whether written notices of such claims were, or were not, given. It was conceded by both parties that the records of the board of county commissioners, required by statute to be kept, contained no reference to any such agreement or understanding; and, on this concession being made, the court rejected the proffered evidence on the ground that oral evidence was not admissible to prove the acts and proceedings of the board of county commissioners.     This ruling of the court is assigned as error.

The question presented was before this court in the case of *Robertson v. King County,* 20 Wash. 259 (55 Pac. 52), and was decided adversely to the conclusion reached by the lower court.     In that case Robertson brought an action to recover for labor performed upon a county road, which he alleged was authorized by the board of county commissioners.     No written contract was entered into be-

tween the claimant and the county for the performance
of the work, nor did the records kept by the board of
county commissioners contain any reference thereto.    It
was objected there, as here, that the contract could not be
proved by oral evidence.    Passing upon this objection,
we said:

" It is not the fault of those who perform services for
the county that the county keeps no record of the authori-
zation, and it would be unjust to hold such persons respon-
sible for the negligence of the commissioners or their fail-
ure for any reason to keep such record, and what was in
fact done may be shown, by evidence *aliunde* the record, to
have been done."

The decision in that case was announced after the trial
of the present case in the court below, and the principle
announced was not, for that reason, followed by the trial
court.    The learned counsel for the respondent, however,
earnestly insisted that the case ought not to be accepted as
settled law.    Without attempting a review of their argu-
ment, or of the many authorities cited, a re-examination
of the question has convinced us that the conclusion
reached therein is correct in principle, and is supported
by the great weight of authority.    The rule is general
that officers of municipal and quasi-municipal corpora-
tions, having power to contract on behalf of their munic-
ipalities, unless restricted by statute, may contract with
reference to municipal business in any manner lawful for
individuals to contract, and such contracts may be either
written or oral.    It is only when the statute prescribes a
particular mode of contracting that the municipality is
confined to any particular mode.    *Arnott v. Spokane,* 6
Wash. 442 (33 Pac. 1063); *Montgomery County v. Bar-
ber,* 45 Ala. 237; *McCabe v. Fountain County,* 46 Ind.
380; *Baker v. Johnson County,* 33 Iowa, 151; *Gillett v.
Lyon County,* 18 Kan. 410.

Our statute is silent as to the mode of contracting by boards of county commissioners, and equally so as to the manner of proving their contracts. While the statute requires such boards to keep a record of "all their proceedings and determinations touching all matters properly cognizable before them" (§ 356, Bal. Code), it nowhere declares their proceedings void if not recorded, nor does it make their record the only evidence of their proceedings. No power or authority is given any one contracting with the county through its board, or furnishing it with supplies or performing services for it on the order of its board, to advise or direct what shall or what shall not be entered in its records; nor is there any means provided by which the records may be corrected. Manifestly, it would be a perversion of justice to permit a county to avoid its contracts, lawful when entered into, by showing a wilful or negligent omission on the part of its officers to perform a duty which the law enjoins solely on them; and especially so where the law gives to the other contracting party no power to coerce the performance of the duty. Neither does the case fall within the rule that oral evidence cannot be substituted for a record which the law requires to be in writing. This rule is applicable only where the existence of the record is a part of the fact necessary to be proved, and has no application where the record is merely a collateral or subsequent memorial of such fact. In the latter class of cases evidence has always been held admissible to prove the actual fact. 1 Greenleaf, Evidence (15th ed.) § 86.

In the well considered case of *Gillett v. Commissioners of Lyon County,* 18 Kan. 410, it was said:

" The defendant also objected to the introduction of any parol evidence tending to show any contract on the part of the county commissioners authorizing the plaintiff to attend to said suits. This objection was sustained, and

in this we think the court below erred.   This evidence did
not tend to contradict anything stated in the county com-
missioners' records, but simply to show facts which had
actually occurred but had not been entered in the proper
record-book of the commissioners' proceedings.    Ordi-
narily, the records of the county commissioners furnish
the best evidence of the acts and proceedings of such com-
missioners; but when such acts and proceedings amount in
law to a contract, and this contract is for services, or prop-
erty, or something of value to be furnished by the other
party, and such contract has been executed by the other
party, and the county has received the benefit of such ser-
vices, or property, or thing of value, it would certainly
not be proper to allow the county commissioners to then
defeat an action for such services or property or thing of
value, merely because the county commissioners and their
clerk had failed to do their duty by making their records
show all their acts and proceedings.    This has virtually
been so decided in the case of *Butler v. Comm'rs of Neosho
Co.*, 15 Kas. 178.    But we would now have to decide
otherwise if we should now hold that the plaintiff in this
action could not prove his said contract by any other evi-
dence than by the county commissioners' records.    We
think he had a right to prove the same by parol evidence.
While the statute (Gen. Stat. 263, § 44) requires that the
county clerk shall record all the acts and proceedings of
the county board, yet there is no statute that renders such
acts or proceedings void if not recorded, and no statute
that makes the records of the county board the only evi-
dence of their acts and proceedings."

So, in *Jordan v. Osceola County,* 59 Iowa, 388 (13 N.
W. 344), it was said:

" A party contracting with the supervisors has no au-
thority or power to cause the contract to be noted in the
record; this rests alone with the county officers.   The law
will not permit prejudice and loss to the party contracting
with the supervisors, by reason of the negligent or inten-
tional omission of the supervisors or the county officers to
enter the fact of the contract upon the proper record."

See, also, 1 Dillon, Municipal Corporations (4th ed.) § 301; Tiedeman, Municipal Corporations, § 108; *Rock Creek Township v. Codding,* 42 Kan. 649 (22 Pac. 741); *Athearn v. Independent District,* 33 Iowa, 105; *Morgan v. Wilfley,* 71 Iowa, 212 (32 N. W. 265); *Taymouth v. Koehler,* 35 Mich. 22; *School District v. Clark,* 90 Mich. 435 (51 N. W. 529); *German Ins. Co. v. Independent School District of Milford,* 80 Fed. 366; *Board of Commissioners v. Stone,* 7 Wyo. 280 (51 Pac. 605); *Bigelow v. Perth Amboy,* 25 N. J. Law, 297; *Hutchinson v. Pratt,* 11 Vt. 402; *Georgetown, etc., Road Co. v. Hutchinson,* 4 Colo. 50; *Reynolds v. Schweinefus,* 27 Ohio St. 311; *Stout v. Yamhill County,* 31 Ore. 314 (51 Pac. 442).

It is further insisted that the proffered testimony was properly rejected for the reason that no offer was made to show a consideration for the modification of the original agreement, or reciprocal advantage accruing to the county by reason thereof, and that the record contains nothing upon which a consideration can be inferred. But no express or independent consideration was necessary. "The contract, when modified by the subsequent oral agreement, is substituted for the contract as originally made, and the original consideration attaches to and supports the modified contract." *Thomas v. Barnes,* 156 Mass. 581 (31 N. E. 683); *Brown v. Everhard,* 52 Wis. 205 (8 N. W. 725); *Badders v. Davis,* 88 Ala. 367 (6 South. 834).

2. In the answer of the respondent it was averred that the lines and levels for the foundation of the building were not furnished the appellant until eight days after the time they should have been furnished by the terms of the contract, and that, in computing the number of days for which the respondent was entitled to claim liquidated damages, "there should be deducted . . . said eight days." At the conclusion of the testimony the appellant requested

the court to instruct the jury that the condition of the
sixth clause of the contract, relating to liquidated damages,
by reason of these facts, was inoperative and not binding
upon the appellant, and that the jury were not warranted
in finding the respondent entitled to any credit for or on
account of liquidated damages.   The court refused to give
to the jury the requested instruction, and instructed them
to the effect that the respondent was entitled to a credit of
$75 per day for each day's delay after the 15th day of Sep-
tember, 1892, up to the 6th day of June, 1893, less the
eight days the respondent had admitted it delayed in fur-
nishing the appellant with the lines and levels, and less
such delays as the jury might find from certain other
causes specially enumerated, not necessary here to be men-
tioned.   In refusing to give the requested instruction, and
in permitting the jury to find liquidated damages, we think
the trial court erred.   By the terms of the sixth clause of
the contract as written, possession of the premises was to
be given the contractor, and the lines and levels for the
building were to be furnished him, on or before the 15th
day of September, 1890.   This date, it will be noticed, is
prior to the date the contract bears, and obviously renders
this requirement of the contract incapable of fulfillment
according to its terms.   The trial court did not, however,
base its ruling upon this ground, nor do the parties make
any contention here based thereon; the appellant's conten-
tion being that the failure of the respondent to comply
with this clause renders nugatory the obligation assumed
by him to complete the building on or before the date
named in the contract, while the respondent contends that
its failure to give possession and furnish the lines and
levels on or before the prescribed time was merely a cause
for an extension of time, which the appellant had waived
by failing to make a claim therefor in writing at the
proper time.   The trial court adopted the view of the

respondent, and allowed an extension of eight days solely because of the averment in the answer that eight days should be deducted.   But whether the promise on the part of the contractor to complete the building on or before the date named in the contract was rendered nugatory by the insertion of this impossible condition, or whether it should be construed as a contract to give possession and furnish the lines and levels within a reasonable time after the execution of the contract, we have not found it necessary to determine.   Either view is necessarily fatal to respondent's claim for liquidated damages.   If it be construed as an agreement with which performance within a reasonable time would be a compliance, it is none the less a condition precedent, which must be strictly performed by the respondent before it can exact of the appellant a performance of the dependent conditions; and we have the positive admission, made in the form of a direct allegation in its answer, that the respondent did not perform within the required time.   The appellant, by entering upon the work after the failure of the respondent to comply with this precedent condition, obligated himself to complete the building within a reasonable time, and, if he failed so to do, is liable to the respondent for all actual damages suffered by it because of such failure.   More than this the respondent cannot insist upon.

The case of *Reichenbach v. Sage,* 13 Wash. 364 (45 Pac. 354, 52 Am. St. Rep. 51), is cited by respondent as authoritative here.   In that case we held it lawful for the parties to a building contract to agree upon a fixed sum per day to be paid as liquidated damages for the time the building shall remain incompleted after a fixed date, where the amount of damages so agreed upon is not excessive or unreasonable, and where the damages, while certain to accrue, may not be readily susceptible of proof under the

ordinary rules of evidence; but the present case presents
a further question. The promise of the appellant to com-
plete the building within a fixed time, or pay a certain sum
per day for each day's delay thereafter, as liquidated dam-
ages, was in the nature of an agreement for a forfeiture;
and the question is, will a forfeiture be enforced when, by
the very terms of the agreement creating it, it is made to
depend upon a condition precedent to be performed by the
party seeking to enforce it, which such party solemnly
admits was not performed? Clearly, it will not. For-
feitures are not favored in law, and always receive a strict
construction against those for whose benefit they are intro-
duced. *Livingston v. Stickles,* 7 Hill, 253.

This question was before the St. Louis court of appeals
in the case of *Eldridge v. Fuhr,* 59 Mo. App. 46. There,
as here, it was contended that the owner was entitled to
liquidated damages, notwithstanding he had not complied
with his agreement to deliver possession of the premises
to the contractor at the time agreed upon. Passing upon
this contention, the court said: 

" The second count in the petition was for damages for
failure to deliver the house within the time prescribed in
the contract. The court by its instruction directed a ver-
dict for the defendants on this count. In this we think the
court was right. This claim for damages is based on the
following section of the contract: 'The contractor shall
and will proceed with the said work  .   .   .   and shall
and will wholly finish the said work  .   .   .   on or be-
for the thirteenth day of June, 1892 (provided that the
possession of the premises be given the contractor, and
lines and levels furnished him, on or before the ninth day
of April, in the year one thousand, eight hundred and
ninety-two), and in default thereof the contractor shall
pay to the owner two dollars and fifty cents ($2.50), for
every day thereafter that the said work shall remain un-
finished, as and for liquidated damages.' The plaintiff
admitted that he did not deliver possession of the premises

to Fuhr until April 20.    This admission defeated the claim."

In *Standard Gaslight Co. v. Wood*, 9 C. C. A. 362 (61 Fed. 74), an action on a contract, where Wood had agreed to construct for the gas company a certain structure and complete it "by Nov. 15th, 1891, under penalty of $100 per day, provided you have foundation ready by June 15th," it was held that the failure of the gas company to have the foundation ready by the required time prevented it from claiming liquidated damages for Wood's delay in completion of the structure; the court saying:

"The promise to complete on November 15th, and to pay $100 for each day's default thereafter, expressly hinged upon the gas company's completion of its part of the work by June 15th.   When the condition upon which the promise depended was unperformed through the default of the gas company, the promise to complete by a certain day was no longer obligatory; but, if the contractors entered upon the work, they were under an obligation to finish within a reasonable time.   The gas company had, by its default, waived or abandoned the right to call upon the contractors for strict performance as to time, who, if they entered forthwith upon the work, had the right to a reasonable time for performance."

See, also, *Starr v. Gregory Consolidated Min. Co.*, 6 Mont. 485 (13 Pac. 195); *King Iron Bridge & Manufacturing Co. v. St. Louis*, 43 Fed. 768 (10 L. R. A. 826); *Ortmann v. First National Bank*, 49 Mich. 56 (12 N. W. 907); *Dannat v. Fuller*, 120 N. Y. 554 (24 N. E. 815); *Mansfield v. Railroad Co.*, 102 N. Y. 205 (6 N. E. 386).

3.    At the conclusion of appellant's case in chief, the court withdrew from the consideration of the jury all of his testimony relating to extra material and labor alleged to have been furnished, except such as the answer admitted, and afterwards gave to the jury upon that subject the following instructions:

" The court further instructs you that by the terms of said original contract, plaintiff [appellant] would not be entitled to any claim for extra work not accepted by said architects, unless the same was done in pursuance of a written order of said architects, Proctor & Dennis, and a notice in writing of said claim to said architects within ten days from beginning said extra work, unless the same was admitted to have been done as extra work by the defendant;" and "that in this case there is no evidence that said architects ordered any extra work done, as provided by the terms of said contract, except" those items specifically admitted in the answer of respondent to be extras.

"And you are further instructed, as a matter of law, that, upon all questions as to the true meaning of drawings and specifications, the amount to be allowed plaintiff for extras or alterations made, that the decision of the architects, Proctor & Dennis, is final and conclusive, unless it shall be shown that said decision is unjust and partial. And if you believe from the evidence that said architects considered all claims made to them in writing for extras, and that their decision upon such claims is just and impartial, your verdict upon these claims should be for the defendant. . . ."

"And you are further instructed that the finding and decision of said Proctor & Dennis upon all matters referred to them during the construction of said building, and with reference thereto, are presumed to be just and impartial until the contrary is shown; and that the burden of proof that any decision of said architects is unjust or partial, is upon the party assailing such decision or alleging it to be unjust or partial, and that unless you believe from the evidence such party has, by a fair preponderance of evidence upon that matter, established that such decision was unjust or partial, your verdict thereon should be in support of such decision."

In charging the jury that the decisions of the architects, being just and impartial, were final and conclusive as to the amount to be allowed the contractor for extras and alterations, the trial court misconstrued the contract. The

second clause of the contract contains the only provision on the subject of the finality and conclusiveness of the decisions of the architects, and it relates solely to questions arising concerning the meaning of the drawings and specifications. The language is, "in event of any doubt or question arising respecting the true meaning of the drawings or specifications, reference shall be made to the architects, whose decision thereon, being just and impartial, shall be final and conclusive." This does not refer to the question of values of extras or alterations, much less does it warrant the charge that the architects' decisions as to such values were final and conclusive.

It was equally erroneous to charge the jury that the contractor could not claim for extra work not accepted by the architects, unless it was done in pursuance of a written order of the architects. The provision relating to written orders is found in the third clause of the contract. By this clause the county was empowered to make, from time to time, as the work progressed, such alterations in the plan of the work as it might desire. When such changes were ordered made, it became the duty of the architects to place a valuation upon the work added or omitted, when, if the contractor agreed to the valuation, the original contract price was to be increased or diminished in accordance therewith as the case might require; but, if the contractor did not agree to such valuation, he was required to proceed with the work on the written order of the architects, when the question of value was to be submitted to arbitrators, whose award was to stand in the place of the architects' valuation. A written order was thus the contractor's authority for making the desired alteration, where the value of the same was not agreed to, and such an order was neither authorized nor necessary where the cost of the change was agreed to in advance of the work. It is evi-

dent, also, that this clause of the contract applied solely to conceded alterations; that is to say, to such alterations in the work as both parties agreed to be alterations, and had no reference to work required of the contractor by the detail drawings which he claimed to be in addition to the work required by the original drawings and specifications, and which the architects and the county claimed to be in accordance therewith.

It follows, from what we have said concerning the right of the appellant to show by parol a waiver by the respondent of the conditions of the ninth clause of the contract, that the trial court erred in withdrawing from the consideration of the jury all the evidence of appellant relating to extras claimed by him, other than such as were admitted by the answer. This evidence, under the rule we have announced, should have been submitted to the jury along with the evidence of the waiver, under an instruction to the effect that, if the jury found a waiver, they were entitled to consider the other evidence, and make such findings thereon as, in their judgment, the facts warranted. But, aside from this, we think the ruling was erroneous. As we have said, the larger part of the appellant's demand for extras arose out of what he claimed to be a difference between the original drawings and specifications and the subsequent detail or working drawings prepared by the architects, which the county required him to follow. While the question was one respecting the true meaning of the drawings and specifications, on which the decisions of the architects, being just and impartial, were final and conclusive, yet the appellant had the right to have submitted to the jury, under the allegations of his complaint, the question whether or not the architects' decisions thereon were just and impartial; provided he had not waived his right to claim an extra for any additional work occasioned thereby, by failing to comply with the condition contained

in the ninth clause of the contract, which required him to
give notice in writing to the architects of all claims for
additional work within ten days of the beginning of such
work.   The record convinces us that there was a substan-
tial compliance with this requirement,—at least, so far as
a considerable part of his claim was concerned.   It was
shown that these differences became early a subject of com-
plaint by the contractor.   He first sought to have the ques-
tion adjusted by agreement, and, failing in this, demanded
that it be arbitrated under the third clause of the contract,
claiming it to be "in the shape of extra work not shown on
the scale drawings, or specified in specifications," which
also was refused him.   Subsequent to that time he repeat-
edly communicated to the architects by letter, stating
wherein he considered the detail drawings differed from
the original plans and specifications, and notifying them
that he would claim an extra for performing the work ac-
cording to the details.   The trial judge excluded these let-
ters, together with others on the same subject leading up
to, and properly explanatory of, them, on the ground that
they were hearsay, and self-serving declarations.   But why
they are so, the record offers no explanation; nor does the
brief of counsel give any reason for that conclusion.   By
the very terms of the contract the contractor was required
to make known his claims for extra or additional work in
this particular way, and certainly that character of evi-
dence cannot be hearsay or self-serving, which the terms
of the agreement, calling for the evidence, require.   It is
insisted here, however, that the letters were rightly re-
jected, because too general in statement to sufficiently in-
form the county of the nature of the claims of the con-
tractor.   But to this it is a sufficient answer to say that
the contract did not call for a particular or minute state-
ment of the elements constituting the claim.   The object

of this clause of the contract was that the county might be kept informed of such work as the contractor claimed to be extra or additional to that required of him by his contract; and while it was the privilege of the county, after receiving such notice, to act upon the information received or to ignore it, if it chose the latter course it cannot now be heard to complain of the generality of the notices; unless, of course, they were so indefinite as not to inform it of the nature of the claim, or put it on inquiry as to its nature. These notices were not thus indefinite, and they should have been submitted to the jury.

In this connection the appellant argues that by the supplemental agreement the respondent waived its right to claim damages for any defect of construction not contained in the architects' statement of defects filed in pursuance thereof. We think differently. By taking possession, in the language of the supplemental agreement, the respondent "accepted the said building subject to its right to claim damages for any work done or materials used in said building claimed by them [it] not to be in accordance with the original plans and specifications, and any other claims for non-performance set forth in such statement." This did not confine the county to defects pointed out in the architect's statement. On the contrary, it expressly reserved the right to insist upon every defect. By this agreement only three things were waived, viz., the final certificate of the architects, the right of the county to claim demurrage after a certain date, and its right to insist that the contractor was concluded from showing that he was entitled to an extension of time in which to complete the building, because the architects had not awarded and certified the amount of such additional time, and it was not a waiver of the right of the county to insist that the contractor show that he had made a claim in writing to the

architects for extra work within ten days of the beginning
of such work, as a prerequisite to his right to recover
therefor.

The court gave this further instruction:

"You are further instructed that the plaintiff in this
case claims that the said architects, Proctor & Dennis, who
had been selected by plaintiff and defendant to have the
direction and supervision of the construction of said build-
ing, and to whom all matters of difference should be re-
ferred, and whose decision thereon, if just and impartial,
should be final and conclusive, were prejudiced and biased
against plaintiff and in favor of defendant; and that said
architects were so prejudiced and biased by reason of their
having executed and delivered to the county of Pierce, the
defendant herein, prior to the commencement of said work,
a bond in the sum of $25,000, conditioned that they, the
said architects, would keep the cost of the building below
the sum of $300,000. You are instructed upon this matter
that the giving of a bond of the kind and character referred
to, would not be evidence of bias or prejudice upon the
part of said architects; but you are at liberty to consider
the giving of said bond as a circumstance in weighing the
testimony of said architects as witnesses, or in arriving at
your decision touching any matter referred to them."

This was error. If the fact that such a bond had been
given was unknown to the contractor at the time he entered
into the contract, then the proviso for referring disputed
matters to the arbitration of the architects was annulled,
so far as he was concerned. It is an ancient maxim, ap-
plicable to arbitrators as well as judges of courts, that no
man ought to be a judge in his own cause. The cause of
the county became, by reason of this bond, the cause of the
architects, and the liability assumed by them made it to
their interest to decide every question affecting the cost of
the building against the claim of the contractor. Bias and
prejudice will always be implied where such conditions
exist; and it was not necessary for the contractor to show

that the architects' decisions were unjust or partial, in order to relieve himself of their conclusive effect, if it be a fact that he had no knowledge of the bond at the time he entered into the agreement making them so. The respondent's counsel argue that this question is not material, because, they say, the overwhelming weight of the evidence was to the effect that the contractor knew of the giving of the bond prior to the time the contract was entered into. An examination of the record, however, convinces us that there was a substantial dispute on this point. In such cases it is always a question for the jury, and never for the court, to determine on which side the preponderance lies.

4. The clause in the specifications relating to the kind of stone to be used in the construction of the building is as follows:

" The exterior walls of the entire building to be of stone, as shown on the plans. All the trimmings, dressings, carved, and moulded work to be of the best, selected Tenino blue stone; all other stone to be of the best, selected Wilkeson stone, free from all defects, laid up in coursed range work. No imperfect stone will be allowed in the building."

The appellant alleged in his complaint, and offered evidence tending to prove, that he had been greatly delayed in the construction of the building because the county, through its architects, had refused for a long time to permit him to use Wilkeson stone procured from any other quarry than the one owned by Mitchell & Smith, and that, by reason thereof, he was damaged in the sum of twenty thousand dollars. It developed as the trial progressed that at the time the contract was entered into only the Mitchell & Smith quarry was opened, that contained stone known as "Wilkeson stone," and the trial court thereupon refused to permit the appellant to make further proof of this alle-

gation of the complaint, and in his instructions to the jury withdrew from their consideration all the evidence upon this subject; instructing them, in effect, that the county had a right to restrict the contractor to procuring stone from the single quarry open at the time the contract was entered into. This was error. The specifications quoted described a quality and grade of stone, and not a particular quarry. The contractor therefore had the right to procure Wilkeson stone from any place where such stone could be found, and if, as a matter of fact, he was damaged by the action of the county in denying him the right so to do, he should be permitted to recover his damages in this action.

5. The trial court should have admitted in evidence the letter from the county commissioners to the contractor, dated July 12, 1893. It is true, the letter recites, "that the board of county commissioners are ready to settle with you for the construction of the new Pierce county court house upon the basis of" the sum named therein, but this recital does not bear upon its face conclusive evidence that the offer of the sum mentioned was made solely for the purpose of effecting a compromise, nor does it preclude the contention of the appellant that it was an admission that the sum named was due him. While the general rule is that no offer made by one party by way of compromise can be given in evidence by the other as an admission of liability, yet whether the offer was made on the faith of a compromise is usually one of fact for the jury. The same rule governs the court in determining this that governs him in determining any other question of fact. There must be no substantial dispute as to what the facts are.

The other questions raised require no separate consideration.

The judgment of the lower court is reversed, and the cause is remanded for a new trial in accordance with this opinion.

GORDON, C. J., and DUNBAR, ANDERS and REAVIS, JJ., concur.