[No. 4003.    Decided December 4, 1901.]

ROYAL A. GOVE, *Appellant*, v. CITY OF TACOMA, *Respondent*.

TAXATION — DELINQUENT TAX SALES — ILLEGAL ASSESSMENT — RECOVERY OF PURCHASE PRICE — SUFFICIENCY OF COMPLAINT.

In an action against a city to recover the purchase price of certificates issued upon sales for delinquent municipal taxes, under an ordinance which authorized the refunding of the purchase price with interest, where such certificates "have been illegally or erroneously issued, or issued on property for a double assessment, on a misdescription, or on city, school, church or otherwise exempt property," the complaint states a cause of action when it alleges that the assessor intentionally and fraudulently placed a valuation upon the property covered by said certificates largely in excess of its true value.

SAME — LIMITATION OF ACTIONS.

Under an ordinance providing for the return of money paid for delinquent tax certificates, by the purchaser, with interest thereon, in case of their having been erroneously issued, and requiring the city comptroller, "when such error is discovered," to cause notice to be given to the purchaser, calling such certificate for cancellation, the statute of limitations does not begin to run against the purchaser's right of action for recovery under the ordinance, until discovery of the irregularity and notice thereof to the purchaser.

Appeal from Superior Court, Pierce County.—Hon. WILLIAM H. SNELL, Judge.    Reversed.

*B. F. Heuston*, for appellant.

*William P. Reynolds, Emmett N. Parker* and *Fremont Campbell*, for respondent.

The opinion of the court was delivered by

MOUNT, J.—This action was brought to recover the purchase price of two certificates of sale of real estate issued by the defendant city upon sales for delinquent

municipal taxes. These certificates were issued by the
city treasurer of said city, and transferred to plaintiff
under Ordinance No. 781. Plaintiff alleges that these
certificates were illegally and erroneously issued upon an
invalid assessment, setting out the invalidity; that such
illegality was discovered in April, 1900, and that he there-
upon demanded cancellation of such certificates, and the
return of his money, with interest, which demand was re-
fused. A demurrer was interposed to the complaint upon
several grounds, only two of which are relied upon here,
as follows: (1) That the complaint does not state facts
sufficient; (2) that the action has not been commenced
within the time limited by law. This demurrer was sus-
tained in the court below upon the latter ground, and
judgment of dismissal entered. Plaintiff appeals.

The questions presented here depend entirely upon the
construction of the ordinance above referred to, which was
in force at the time the certificates were purchased by
plaintiff, and which is as follows:

"Ordinance No. 781.
"An ordinance for the cancellation of illegally or irregu-
larly issued certificates of sales upon unpaid and delin-
quent municipal taxes and on streets and sewer assess-
ments, and prescribing the manner of refunding the
money paid for such certificates and the interest
thereon.
"Be it ordained by the city of Tacoma:
"Section 1. That all certificates of sale regularly is-
sued from the city of Tacoma by the officer authorized so
to do, to the purchaser at sales for delinquent and unpaid
municipal taxes or afterwards transferred by the city to
other parties, where the city was the purchaser at such
sales, and that shall have been illegally or erroneously
issued, or issued on property for a double assessment, on
a mis-description or on city, school, church or otherwise
exempt property, shall be declared as illegal and erron-

eously issued certificates of sales under the operation of this ordinance.

"Sec. 2. All certificates of sales issued by the city of Tacoma and by the proper officer of the city to purchasers at sale for unpaid and delinquent street or sewer assessments or certificates of sale afterward transferred to other parties, where the city became the purchaser at those sales, shall, where such street or sewer assessments have been declared illegal by any court in the meaning of this ordinance, be declared illegal or erroneously issued certificates of sale.

"Sec. 3. All certificates of sale as described in sections 1 and 2 of this ordinance heretofore or hereafter issued by the city of Tacoma shall immediately upon coming under the operation of the ordinance be canceled by the city, and the holder of such certificates of sale if other than the city shall receive the original amount paid by him, together with 10 per cent. interest per annum from the date of sale until such a cancellation takes place in accordance with this ordinance.

"Sec. 4. The city comptroller shall, when such error is discovered as would place the certificate of sale under the operation of this ordinance, cause a notice to be given to the holder of such certificate, where known, calling for such certificate of sale, for the purpose of cancellation, and notifying the holder thereof that unless such certificates of sale are surrendered to the city on or before ten days from date of such notice, all interest will cease.

"Sec. 5. When certificates of sale are canceled in accordance with this ordinance, a warrant shall be drawn on the general fund for the amount of such certificate of sale and the interest as hereinbefore set forth, and delivered to the person presenting such certificate for cancellation.

"Approved Jan. 11, 1893."

Respondent contends that only two classes of illegal or erroneously issued certificates are declared such under the ordinance, viz.: (1) Certificates issued on property for a double assessment on misdescription; (2) on city, school,

church, and otherwise exempt property. We are of opinion, however, that the words used in this ordinance are used in their usual and ordinary sense, and that the terms "illegally or erroneously issued" are not limited by the classes named as double assessments and exempt property, but are an independent class, and include, as they say, all certificates regularly issued from the city that shall have been—First, illegally or erroneously issued; second, issued for double assessment; and, third, issued on exempt property,—the first class referring, no doubt, to the method of assessment and issue, and the other two classes referring to the property assessed. This case has to do with the first class, and these certificates are alleged to have been illegally and erroneously issued for twelve reasons. In considering the first ground of demurrer, it is not necessary to consider all of these reasons. Passing by those which have not been before this court, subparagraph "e" of the first cause of action in the complaint is as follows:

"That said assessor did not fix a true valuation upon the property described in said certificate, but, on the contrary, for the purpose of increasing the debt limit of said city to a false and excessive amount, in order that certain bonds and warrants might be issued with an appearance of legality, which could not have been issued without disclosing their invalidity, if said property and other property in said city had been assessed at its true valuation, said assessor intentionally, arbitrarily, maliciously, and fraudulently placed a valuation upon said property at least four times as much as its true value."

This is a distinct allegation that the officer whose duty it was to make the assessment not only disregarded his duty to assess the property, according to its value, but fraudulently placed a valuation thereon largely in excess of its true value. This court has repeatedly held that,

when public officers in discharge of their duties fraudulently refuse to exercise their judgment, and tyrannically place an excessive valuation upon property, the courts will relieve against such excessive valuation. *Andrews v. King County,* 1 Wash. 46 (23 Pac. 409, 22 Am. St. Rep. 136); *Whatcom County v. Fairhaven Land Co.,* 7 Wash. 101 (34 Pac. 563); *Benn v. Chehalis County,* 11 Wash. 134 (39 Pac. 365); *Lockwood v. Roys,* 11 Wash. 697 (40 Pac. 346); *Knapp v. King County,* 17 Wash. 567 (50 Pac. 480); *Noyes v. King County,* 18 Wash. 417 (51 Pac. 1052); *Landes Estate Co. v. Clallam County,* 19 Wash. 569 (53 Pac. 670); *Templeton v. Pierce County,* 25 Wash. 377 (65 Pac. 553). This being the rule, it follows that the certificate of sale was illegally and erroneously issued for the amount named therein, and could not be enforced against property described therein for the excessive taxes. The complaint, therefore, stated a cause of action.

2. The complaint shows upon its face that the certificates mentioned were purchased by plaintiff of said city more than six years prior to the time this action was begun, so that, if the statute of limitations began to run against the claim at the time the certificates were purchased by plaintiff, this action was barred when brought. The pertinent inquiry, then, is, when did the statute begin to run? This question, too, as we view it, depends upon the ordinance above quoted. Section 3 provides that the certificate of sale shall, immediately upon coming under the operation of the ordinance, be canceled by the city, and the holder shall receive from the city the original amount paid by him, together with interest at the rate of 10 per cent. per annum from the date of sale. Section 4 provides that the city comptroller shall, when such error is discovered as would place the certificate

under the operation of the ordinance, cause a notice to be given to the holder of such certificate calling the same for cancellation, etc. The object of this ordinance is manifest, viz., to guaranty to purchasers of these certificates that the certificates are legal, and properly issued, and, if not valid, the return of the money paid therefor, with interest. The rule of *caveat emptor* urged by respondent can have no application in a case of this kind, for the reason that the purchaser need take no notice of the record to learn whether the certificate is regularly and legally issued, and is therefore of value. If it is of no value as a certificate of sale of real estate, it is of value as a contract with the city to repay the money paid for it with interest at some future time, and may be of greater value for the latter account than the former. It is further manifest from the ordinance that the city intended to sell these certificates so as to realize the delinquent taxes due the city, and to refund the money advanced upon them only after actual discovery that they were invalid. It cannot reasonably be said that the city intended that these certificates should be sold after discovery that they were illegal, and thus used as an obligation upon which to borrow money, because upon such discovery it is made the duty of the city comptroller to call such certificates for cancellation. If the purchaser is bound to take notice of what appears of record in the assessment, levy of taxes, and sale of the property, and to know of the illegality thereof at the time of the purchase, the city likewise must be bound by the same notice, and must, immediately upon the issuance of the certificate, give notice of its cancellation. Such construction of the ordinance renders it absolutely inoperative and of no effect. The ordinance was intended to serve a useful purpose. The city desired to realize upon delinquent taxes,

and by the ordinance agreed that, until there was an actual discovery of the illegal or erroneous issue of certificates, no liability arose against it. It cannot be claimed that, if the certificates are valid, and properly issued, the city is liable in an action for the money paid therefor, nor can it be claimed that the city is liable before discovery. It becomes liable only at the date of actual discovery of the illegal or erroneous issue, which discovery brings the certificate under the operation of the ordinance. The rule, we think, is well stated by counsel for appellant as follows:

"It is a question of the intention of the parties. If the language and circumstances connected with the subject-matter contemplate a matured obligation, the statute runs; if a future maturity, the statute does not run until such maturity."

Clearly, the language and circumstances here indicate a future maturity. The language is:

"The city comptroller shall, when such error is discovered, . . . cause notice to be given to the holder . . . calling for such certificate . . . for cancellation."

The holder of such certificate has a right to rely upon the officer to perform his duty under the law. It is thus within the power of the city to put the statute running upon discovery. It is within the power of the holder of any such certificate to collect the amount paid therefor, after giving notice to the city of said discovery. In the case of *Rork v. Commissioners,* 46 Kan. 175 (26 Pac. 391), cited and relied upon by respondent, there was no obligation on the part of the county clerk or board of county commissioners to notify the holders of certificates of the discovery of the errors or irregularities, or to call the certificates for cancellation; and the court there held

that the holder was bound to know the record, and to present his certificates for payment within three years. In the case at bar it was the express duty of the officer to notify the holder and call the certificates for cancellation. This, we think, distinguishes this case from that one, and from all that class of cases where the rule of *caveat emptor* applies. The case of *White v. Brooklyn,* 122 N. Y. 53 (25 N. E. 243), is a case in point. It is there held that, on account of a provision in the certificate that, if any irregularity shall be discovered in the proceedings, the purchase money and all sums paid shall be repaid to said purchaser, the right to the recovery of the purchase money depended, not on the existence of an irregularity, but on the discovery thereof, and that the statute did not begin to run until such discovery. We are of the opinion, therefore, that the statute of limitations did not begin to run until the discovery and notice to plaintiff. This is alleged to have been in April, 1900. The action was begun in June of the same year.

The cause will therefore be reversed, with instructions to the lower court to overrule the demurrer.

REAVIS, C. J., and DUNBAR, FULLERTON, WHITE, ANDERS and HADLEY, JJ., concur.