[No. 4960.    Decided March 23, 1904.]

ROYAL A. GOVE, *Respondent,* v. CITY OF TACOMA, *Appellant.*[1]

MUNICIPAL CORPORATIONS—ORDINANCES—PASSAGE—PRIMA FACIE PROOF—CERTIFIED COPY OF RECORD. Under Bal. Code, § 1299, a certified copy of the record of an ordinance is prima facie proof of its due passage, establishing the existence of the ordinance until the presumption is overcome.

[1]Reported in 76 Pac. 73.

SAME—RECORD BOOK—ORIGINAL SIGNATURES OF OFFICERS. Where a city charter requires a record book of ordinances to be signed by certain officers, the same with the original signatures of such officers is valuable and weighty evidence in support of the statutory prima facie proof by a certified copy of the record and is not overcome by evidence of a mere negative character.

SAME—JOURNAL ENTRIES—IDENTIFICATION OF ORDINANCE BY REFERENCE TO SUBJECT MATTER. The journal entries need not refer to an ordinance by number, and they sufficiently identify the ordinance by reference to its subject matter, when no other ordinances were introduced upon the same subject.

SAME—JOURNAL ENTRY AS TO PASSAGE. A journal entry to the effect that an ordinance "was passed by council" is not insufficient as a legal conclusion, but is in reality a statement of a fact when there is other evidence of its due passage.

SAME—ORAL EVIDENCE OF VOTE WHERE JOURNAL IS SILENT. When the journal entry states that an ordinance "was passed by council" without stating what the vote was, it is competent to show by the oral testimony of a member of the council who was present that the ordinance was passed by a vote of twelve for and four against it, upon the theory that evidence *aliunde* the record is admissible where no record was made.

TAXATION—SALE FOR CITY TAXES—VALIDITY—FEE FOR CERTIFICATE—NOT PART OF COSTS. Upon a sale of lands for city taxes the addition of $1.00 for issuing the certificate of sale constitutes such a part of the sum for which the land was sold as to render the certificate void, when the costs allowed by law included only "costs to date of sale," and "costs as advertised," and the notice to the owner did not warn him of any such additional burden (FULLERTON, C. J., dissents).

SAME — FEE FOR CERTIFICATE IN EXCESS OF TAX — ORDINANCE GUARANTEEING REPAYMENT IN CASE OF VOID SALE—OBLIGATION OF PURCHASER TO INVESTIGATE. Where an ordinance guarantees to purchasers at city tax sales the repayment of the original amount with interest from date of sale, in case the sale shall be declared void, the purchaser is under no obligation to make an investigation as to the amount demanded by the city, and the sale is void by reason of the city's having unlawfully demanded a fee of $1.00 in excess of the tax and costs due, and the city cannot claim that such fee is no part of the sum paid at the sale.

SAME—TAX SALE—VALIDITY—EXCESS IN SMALL AMOUNT. A void tax sale for too large an amount can not be held valid on the ground that the amount of the excess was small.

SAME—IRREGULARITIES AVOIDING TAX SALE—EXCESS IN AMOUNT.
A summary sale of land for taxes must strictly follow the direc-
tion of the law, and is void where there is an excess of one dollar
charged, taken in connection with such other irregularities as
failure to comply with the requirements to accompany the roll
with an affidavit as to its correctness, to carry out in separate
columns the amount issued against each owner, to sell in the al-
phabetical order of the names of the owners, and to offer to sell
to the person who would take the least quantity and pay all taxes
against the owner (FULLERTON, C. J., dissents).

LIMITATION OF ACTIONS—TAX SALE FOR EXCESSIVE AMOUNT—
GUARANTEE OF CITY—ACTION TO RECOVER SUM PAID—STATUTE BE-
GINS TO RUN WHEN—DISCOVERY OF INVALIDITY OF SALE—KNOWL-
EDGE OF PURCHASER. Where an ordinance guarantees to purchas-
ers at city tax sales the amount paid in case the sale shall be de-
clared void, and provides for notice thereof to be given the pur-
chaser, the statute of limitations against an action based on the
ordinance does not begin to run until the purchaser discovers that
the sale was void, and the bare fact that an excessive fee of $1.00
was unlawful, does not charge the purchaser with knowledge that
the sale was void, since the city by the ordinance undertook for
itself to make the discovery and notify the purchaser.

APPEAL—DECISION—IMPORTANCE OF CASE. The fact of the great
importance of the case by reason of the large amount involved
in similar pending cases does not justify departure from establish-
ed principles.

Appeal from a judgment of the superior court for
Pierce county, Snell, J., entered July 31, 1903, upon
findings in favor of the plaintiff, after a trial on the
merits before the court without a jury, in an action to
recover the amount paid upon void tax sales. Affirmed.

*William P. Reynolds, Emmett N. Parker,* and *Harvey
L. Johnson,* for appellant.

*B. F. Heuston,* for respondent.

HADLEY, J.—This cause was once before in this court,
as will be seen in *Gove v. Tacoma,* 26 Wash. 474, 67
Pac. 261. Prior to the other appeal, the trial court sus-
tained a demurrer to the complaint, and entered judgment

of dismissal. This court reversed the judgment, and re-
manded the cause with instructions to overrule the. de-
murrer. Upon the return of the cause to the superior
court, the demurrer was overruled. Issues were joined
by answer and reply, a trial was had before the court
without a jury, and a judgment entered that the plain-
tiff shall recover according to the demand of his com-
plaint. The city has appealed.

Reference to the former opinion will disclose that the
action is based upon the provisions of an alleged ordi-
nance of the city of Tacoma, whereby the city under-
took to reimburse purchasers of certificates at city tax
sales, if it should develop that the certificates were ille-
gally or erroneously issued. The ordinance is fully set
forth in the former opinion, and we hereby refer thereto
for its terms. The first assignment of error here is that
the trial court erred in finding that the city passed the
said ordinance, and that it became a valid law. Appellant
correctly states that, if there is no law in the form of
statute or ordinance which renders the city liable to
refund the purchase money for these tax sale certificates,
then the rule of *caveat emptor* applies, and the respondent
has no remedy. When the cause was here before, the de-
murrer to the complaint admitted the allegations as to
the existence of the ordinance, and the discussion of the
case at that time was upon the assumption that such an
ordinance in fact existed. Under the subsequent plead-
ings, however, the existence of the ordinance was put in
issue.

It is contended that the evidence is insufficient to sus-
tain the finding that the ordinance was passed by the
city. In the first place, it is provided by § 1299, Bal.
Code, that all city ordinances shall be recorded in a book

to be kept for that purpose by the city clerk, and, when so recorded, the record thereof shall be received in any court of this state as prima facie evidence of the due passage of the ordinance as recorded. Such a record of this ordinance was introduced, and, since under the statute the record was prima facie evidence of due passage, it must be held that said evidence establishes the existence of the ordinance, unless the presumption attending the prima facie proof has been overcome by other proof. In addition to the above statutory provision, it was admitted at the trial that the charter of the city requires that all ordinances shall be recorded at length in a book to be kept for that purpose, and that, after such record is made up, each ordinance shall be there again signed by the mayor of the city and the president of the council, and shall also be attested by the clerk. Such a book was also introduced in evidence, and it was found to contain this ordinance, with the original signatures of the mayor, the president of the council, and city clerk, as required by charter. It was also admitted that the ordinance was regularly published in the official newspaper of the city, as required by the charter.

By statute the mere ordinance record book was prima facie evidence, but this record was further fortified by the actual signatures thereon of the sworn officers of the city, who had signed it in accordance with directions of the charter. Respondent's counsel observes in this connection that, when a record is thus fortified by the acts of sworn officers, it would seem that nothing short of proof of actual fraud amounting to a criminal conspiracy could overcome the presumption that the ordinance was really passed. We are not now prepared to say that such may be the law; but it is sufficient to say that the signatures

of the officers, thus entered in a book kept under charter directions for that purpose, constitute valuable and weighty evidence, which it is proper to consider in addition to the ordinary presumption arising from the prima facie proof made by the record itself. Therefore, unless the presumption attending the prima facie proof, and said additional evidence of a highly credible character, have been overcome by other proof, the ordinance must be held to have been duly passed.

The evidence offered by appellant is of a negative character. It is urged that, as the journal of the city council proceedings fails to show certain facts, it should be found that such facts did not exist. The journal shows, that an ordinance on the subject of which this one treats was introduced and read the first time; that the rules were suspended and it passed to a second reading, after which it was referred to the judiciary committee; that said committee reported favorably upon the ordinance, and that the report was adopted; that the ordinance then passed to a third reading, was amended in a particular specified, and, as amended, was passed. It is insisted that the journal entries are not sufficient to identify this ordinance as the one referred to in the entries. We think they are. It is not referred to by any number, it is true; but it was shown that it is not the custom of the city to give numbers to ordinances until after they have actually passed and been properly signed. The proper number of this ordinance does appear in the margin opposite the last journal entry upon the subject; but it appears that this was placed there by the clerk at a time after the record was made. In any event, the subject-matter of the journal entries and of the ordinance was the same; and it satisfactorily appears that no other ordinances have been introduced upon this subject.

· It is, however, further contended that the journal does not show that the required number of councilmen voted for the passage of the ordinance. The record states that it "was passed by council." It is argued that the above words state a legal conclusion only, and that the failure to state by what vote the ordinance was passed was fatal. Oral evidence was admitted to show the actual vote by which it was passed, and the appellant assigns the admission of such oral evidence as error. Appellant cites *Buckley v. Tacoma*, 9 Wash. 269, 37 Pac. 446, as supporting its contention that oral evidence was improperly admitted. In that case it was sought to establish that the prayer of a certain remonstrance was granted, for which a two-thirds vote of the council was required. The journal failed to show by what vote it was done. The city clerk testified that the vote was probably *viva voce*. The court said: "The record being thus bare of facts to sustain the proposition that the committee report was adopted by the vote of eleven or more members, the burden was upon the respondent to establish it, but it failed therein, as the testimony of the clerk showed still more conclusively that nobody knew what the real vote was." Thus an effort was made to prove the fact orally, but it appeared that no one knew what the fact was. The testimony of the clerk was unavailing, for if the vote was taken *viva voce,* then, as the court observed, "the *viva voce* vote which the clerk recorded may have been merely the ayes of half a dozen members; the remainder keeping silent."

The witness who testified in the case at bar was a member of the city council when this vote was taken. He testified that he knew that the ordinance passed the council, and that the vote was twelve for the ordinance and

four against it, or that three voted against it and one was absent. Unlike the testimony in *Buckley v. Tacoma, supra,* the above was a positive statement of the fact as to the vote and how it was divided. If the testimony was competent, it sets at rest the contention that the ordinance may not have received the required number of votes. The authorities are not uniform as to this character of proof; but this court has held that oral evidence is admissible to show what has actually been done by boards of county commissioners when no record of the subject has been made, though the law provides that such a record shall be kept. The rule is based upon the theory that, as there is no statute which makes the records of county commissioners the only evidence of their proceedings, it is competent to introduce evidence *aliunde* the record to prove actual proceedings of which no record has been made. *Robertson v. King County,* 20 Wash. 259, 55 Pac. 52; *Long v. Pierce County,* 22 Wash. 330, 61 Pac. 142; *Nickeus v. Lewis County,* 23 Wash. 125, 62 Pac. 763; *Burrows v. Kinsley,* 27 Wash. 694, 68 Pac. 332.

We see no reason why the rule applied to the acts of boards of county commissioners, who are the acting functionaries of subordinate municipalities of the state, shall not apply with equal force to the acts of city councils, who represent municipalities of like character. We therefore think the court did not err in admitting and considering the evidence. The evidence of the witness effected little more than to make certain what was already reasonably certain from other proof, viz.: that the journal entries referred to the ordinance that was recorded and published, and that the statement in the journal—that the ordinance was passed—while technically the statement of a legal conclusion, was in reality the statement of a fact. For the

foregoing reasons, we do not think that the presumption in favor of the regular passage of this ordinance has been overcome; but we think it is abundantly supported, and it must be held that the ordinance is valid.

It is next assigned that the court erred in finding and holding that the one dollar fee indorsed upon the certificates of sale, and which was paid by the purchaser, constituted such a part of the sum for which the land was sold at tax sale as rendered the certificates void. Two propositions are urged by appellant in support of its contention in this connection: (1) that the fee was no part of the bid or purchase price of the land; and (2) that, even if it was a part of the purchase price, the charter authorizes the charge as a part of the costs. We are unable to find any charter provision which we think authorizes the charge as a part of the costs. The reference to costs in § 115 is, "Costs to date of sale." In § 117 it is, "Costs as advertised." We think the property holder, from the charter provisions and from the notice of sale, had the right to assume that all costs were included in the amounts set out in the notice. The notice stated that the sale would be made to satisfy the delinquent and unpaid taxes, with interest, penalty, and costs. A gross sum was then set out in front of each description of property, and the reasonable inference to be drawn from the notice was that the amount stated in each instance included costs, and was the whole sum that would be demanded at the sale. The charter provision relating to the issuance of the certificate of sale in no way refers to any charge for its issuance. We think the fee cannot be regarded as costs, within the charter provisions, and especially so, since the notice to the land owner did not warn him of the attempt to cast the additional burden upon his land.

It is next contended that, even if the dollar fee was not properly collectible as costs, it constituted no part of the sum paid at the sale. It is therefore argued that the purchaser, by mandamus, could have compelled the issuance of the certificate without the payment of the one dollar fee. Granting that he might have done so, yet the ordinance above discussed was passed to serve the convenience of the city, and to induce this purchaser and others to pay money at once, without stopping to inquire as to the regularity of the proceedings, or as to what might be done through the courts. The purchase was made under a solemn guaranty of the city that the proceedings were regular, the certificates good, the amount paid a lien upon the land, and, if not so, that the whole sum would be repaid by the city. Under such circumstances the purchaser was under no obligation to make any investigation, but had a right to rely upon municipal good faith in the payment of the entire sum which was demanded as a condition for the delivery of his certificate. The guaranty of the ordinance is that the holder of the certificate "shall receive the original amount paid by him, together with ten per cent interest per annum from the date of sale." It is plain, from what has been said, that he could not demand the one dollar, and interest thereon, from the land owner in the event of redemption, and he is under no obligation to split his demands, making a part against the land owner and part against the city. His dealing was with the city, and, under the plain terms of the guaranty, he has the right to make a single demand from the city for the whole sum guaranteed. Moreover, as the land owner could insist that the certificate was void, the purchaser was not in position to enforce any portion of the sum represented by it as a lien against the land. While the amount of the unlawful charge was small, yet

the principle involved is the same as if it had been a larger sum. As the trial court, in an opinion filed, aptly observed, if the officer can, at his own caprice, charge one dollar against a given piece of property, the amount he may charge is limited only by his caprice.

In the opinion filed by the trial court, the only matter specifically mentioned as rendering the certificates void was the one dollar fee. But respondent urges that other facts, found by the court but not mentioned in the said opinion, were also sufficient to make them void. Among the facts so found which are urged as fatal irregularities are the following: The charter provides that the city clerk shall deliver the equalized assessment roll to the controller, and shall accompany it with his affidavit to the correctness thereof. A form of affidavit accompanying the roll of 1892 appears to have been signed by the clerk. Objection is made to it as insufficiently complying with charter requirements. Not discussing that subject, it does appear, however, that no jurat was signed by any officer, certifying that the clerk was ever sworn. The charter also requires that the controller shall carry out in separate columns on the roll the amount of the taxes assessed against each individual, firm, company, corporation, or unknown owner. The court found that this was not done, and that the controller knowingly pursued a different plan, viz.: that the property was set out in numerical order, so that the descriptions of different tracts owned by one person were separated and mixed with the descriptions of the property of others; and also that the owner of the property described in the certificates in question owned more than one tract included in the roll. The charter required that the notice of sale should conform to the plan provided for the assessment roll, and

that at the sale the treasurer should offer for sale the property advertised, commencing at the head of the list and
continuing, in alphabetical order, with the names of persons whose taxes were delinquent.   The court found that
this was not done, but that the treasurer sold each piece
as listed upon the roll, and not in alphabetical order.   The
charter required that the treasurer should offer to sell all
the property of any owner of two or more tracts of land to
the person who would take the least quantity so offered,
and pay all the taxes against such owner or against his
property.   The court found that this was not done, and
that the lists were not so made up that it could be done.
Other irregularities are also suggested as established by the
court's findings, but we do not deem it necessary to specify
them.

Whatever may be said of the wisdom of the charter
requirements, they were nevertheless controlling.   If this
were a foreclosure of a tax lien under the present general
revenue law, with the property owner before the court,
then under the liberal construction of the statute adopted
by this court in *Smith v. Newell,* 32 Wash. 369, 73 Pac.
369, and approved in the recent case of *Jefferson County v.
Trumbull, ante* p. 276, 75 Pac. 876, decided March 11,
1904, the above omissions could probably be corrected by
the court.   But such is not the case here.   We are considering only the validity of a summary sale of property
for taxes.   It has long been the rule that the outlined
statutory procedure leading up to such a sale, and governing the sale itself, must be strictly pursued.   We deem
it unnecessary to cite authorities in support of a principle
so generally declared.   The following is, however, a comprehensive statement of the reasons for the decisions:

"The process of collecting taxes by the sale of lands for
their non-payment is a summary remedy, and in great meas-

ure *ex parte.* Notwithstanding all the precautions which the law establishes, it is very possible that the owner may be entirely unaware of the proceedings until the sale has been consummated. The power of the collector to sell rests exclusively upon statutory authorization and is derived from no rule or principle of the common law. This power is a naked power, not coupled with an interest. . . . Now, from these considerations it is easy to deduce a general rule. In order that a sale of land for taxes should be valid and unimpeachable, and should pass a good title to the purchaser, it is necessary that all the preliminary requirements of the statutes, made conditions to the exercise of the power, and designating the various proceedings which are to culminate in the sale, should have been strictly complied with, and that the officers who execute the power should follow with precision, in so doing, the course marked out for them by law, and that the conditions subsequent to the sale, if any, should be duly observed. And upon this point the authorities are unanimous." Black, Tax Titles (2d ed.), § 155.

We therefore think, under the rules applying to summary sales for taxes, that, in addition to the one dollar fee first discussed, the various other irregularities above noted— at least, when aggregated—also constituted serious departures from charter provisions, and rendered the certificates of sale void.

It is next insisted by appellant that the action is barred by the statute of limitations, and it is urged that this question was not passed upon in the former appeal. The subject was discussed at length in that opinion. We held that the statute did not begin to run until the actual discovery of the illegal or erroneous issue. We also held, as we have stated here, that the certificate holder was not under any obligation to make investigation that would lead to such discovery. It is now insisted that the fact that the one dollar fee was charged was known to the purchaser from the time of the sale, for the reason that

it was indorsed on the certificate itself. It is, therefore, argued that, since the bare fact was thus brought to his knowledge, the statute must then have commenced to run. Appellant's position is that respondent was chargeable with knowledge of the legal effect flowing from knowledge of the fact. Ordinarily this would be true, but in this instance the city, by its ordinance, undertook for itself to make the discovery, and to notify the certificate holder. Under such circumstances, he was under no obligation to seek legal counsel in the premises, and, at least until he was actually advised of the illegality of the certificates, the statute did not run against him. It was proven as a fact at the trial, and found by the court, that respondent first became aware of the illegality of the certificates in the spring of 1900, when he was so advised by his counsel. This action was commenced in the year 1900. It was therefore begun within time, under any of the statutes of limitations, and it seems unnecessary to discuss the phase of the subject relating to the particular limitation which applies.

Appellant's counsel suggests that this is a case of great importance to the city of Tacoma, and that other cases are now pending in Pierce county involving in the aggregate near $50,000, which must in effect be determined by the decision in this case. Such conditions, however, do not justify departure from established principles. An effort to do so now would doubtless lead to serious embarrassment and confusion in other cases.

The judgment is affirmed.

MOUNT and DUNBAR, JJ., concur.

ANDERS, J., concurs in the result.

FULLERTON, C. J. (dissenting)—As I cannot agree with the holding that the tax certificates are void, I am compelled to dissent from the judgment ordered by the majority.